636 So.2d 608 (1993)
Gerald SIMPSON, Individually and as Administrator of the Estate of His Minor Son, David S. Simpson, and Sally Prine Simpson,
v.
STATE of Louisiana Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
Troy LOFTON, Individually and as Administrator of the Estate of His Minor Son, Troy Lofton, Jr.
v.
The STATE of Louisiana Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT and Gerald Simpson, Individually and as Administrator of the Estate of His Minor Son, David S. Simpson, and Champion Insurance Company.
Patricia MILTON, Individually and as Administratrix of the Estate of Her Minor Son, Robert Marc Huber
v.
STATE of Louisiana Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT and Gerald Simpson, Individually and as Administrator of the Estate of His Minor Son, David S. Simpson.
Nos. 92 CA 0115 to 92 CA 0117.
Court of Appeal of Louisiana, First Circuit.
December 7, 1993.
Dissenting Opinion January 20, 1994.
Opinion Granting Rehearings in Part, Denying Rehearings in Part March 21, 1994.
Writ Denied May 6, 1994.
*610 Walter Landry Smith, Baton Rouge, Robert Carter, Greensburg, for Gerald Simpson.
William Quinn, Kentwood, for Patricia Milton.
Curtis K. Stafford, Jr., Baton Rouge, for Troy Lofton.
Randall Cashio, Baton Rouge, for State of La. Dept. of Transp. & Development.
T. Jay Seale, Hammond, AL, C.T. Williams, Metairie, for State of La.
Before WATKINS, CRAIN, GONZALES, WHIPPLE and PITCHER, JJ.
Dissenting Opinion of Justice Gonzales January 20, 1994.
CRAIN, Judge.
This appeal stems from a tragic accident that occurred on May 23, 1987, on La. Hwy. 1054, which is a rural road in Tangipahoa Parish, Louisiana. Three boys received substantial injuries when the pickup truck in which they were riding went out of control and hit the railing of a trestle bridge under the "garde" of the State of Louisiana, Department of Transportation and Development (DOTD).
The driver was 15-year-old David Simpson; he was a relatively inexperienced driver, who had been driving for only six months and who had driven a truck only one time before the day of the accident. David Simpson was driving a pickup truck purchased by his father the day before the accident. The windshield wipers did not work, and both rear tires were bald.
Two 16-year-old friends were guest passengers in the pickup truck; they were Troy Lofton, Jr., seated in the middle, and Robert Marc Huber, seated on the passenger side.[1] The Simpsons lived on McElveen Road, a roadway that intersects with La. Hwy. 1054, and the boys had been to the residence a short while before the accident.
Although it had rained earlier that day, it was during a sudden, downpouring rain, according to the trial court's findings, that the Simpson truck approached the small stream crossed by the bridge. David Simpson braked the truck and it fishtailed, sliding at *611 an angle perpendicular to the road. The driver's side of the cab was forward, and it struck the bridge railing at a ninety degree angle. The metal railing for almost the entire length of the bridge entered the driver's door, went completely through the cab, and exited the other side.
The record reveals that the timber trestle bridge involved in the instant case was erected by the State of Louisiana in 1956. Some time during the 1960s, the metal siderails consisting of deep beam "W" metal were attached. The ends of the railings were fitted with smaller pieces of the same metal, welded at 45-degree angles (referred to as "wing rails") that pointed toward the highway shoulders immediately in front of the bridge.[2]
By the date of the accident, May 23, 1987, the bridge in question had been damaged by previous hits. At the northeast corner previously struck by vehicles, the outer piece of the welded joint had been knocked off, leaving the first two vertical wooden posts exposed, as well as exposing the sharp end of the metal railing. The bare rail end faced the direction of travel, approximately 12 feet from the middle of the roadway.
DOTD's bridge inspector Frank Legoria testified that the 1983 inspection report indicated the "wings" needed to be welded. The same report contained a recommendation that the bridge be rehabilitated. The department's inspection report for May 9, 1984, stated that several bridge rail posts were decayed and needed replacing. Then, there were no reports for three years. But on May 11, 1987, just 16 days before the accident, an inspection report, with photographs, illustrated that the "wings" had never been repaired. The northeast corner was photographed, showing the bare vertical posts and the capless, horizontal metal railing pointing toward approaching traffic. It was this capless metal railing that penetrated the driver's door of the Simpson pickup truck and exited the other side for a considerable distance.
DOTD's duty to maintain all highways in the state system includes a duty to maintain reasonably safe roadways and shoulders. The duty is owed to those people who may drive onto the shoulder inadvertently, having no knowledge or reason to know of the defective condition that would make travel on the shoulder hazardous. Lang v. Prince, 447 So.2d 1112 (La.App. 1st Cir.), writs denied, 450 So.2d 1309 and 1311 (La.1984). Whether or not a condition of a highway is a dangerous and hazardous one is a factual determination. Dagnall v. Louisiana Department of Highways, 426 So.2d 276 (La.App. 4th Cir.), writ denied, 433 So.2d 160 (La.1983).
In the instant case the trial court found that DOTD was negligent for not repairing the bridge and not eliminating an unreasonably dangerous condition, and that the defective bridge caused the injuries. The trial court found that there was no negligence on the part of the driver or his passengers.
Although we cannot agree with the trial court that the driver was without substantial fault that contributed to the injuries, we do not find that the trial court committed manifest error in deciding that DOTD was liable. Whether we decide that DOTD was strictly liable for the defect or that DOTD was negligent in failing to make repairs is immaterial, as liability attaches because DOTD breached its duty to the injured parties. See Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir. 1983). The instant case is similar to the recent case of Rick v. State through Department of Transportation and Development, 619 So.2d 1149 (La.App. 1st Cir.1993), wherein we held that DOTD had assumed the responsibility to upgrade a railroad crossing, and its failure to do so within a reasonable time constituted a breach of duty to sign the *612 crossing. Likewise, in the instant case DOTD recognized its duty to repair the damaged bridge as early as 1983, but the repairs were not made until after the 1987 accident.
Nevertheless, DOTD argues on appeal that its liability is barred because the condition of the bridge, however defective, was not the cause of the driver's losing control of his vehicle.[3] We find such an analysis of causation questionable. This case involved one, and only one, unfortunate eventa collision of the truck with the bridgeand the actions of the driver and the inaction of DOTD combined to cause the event. See Efferson v. State through Department of Transportation and Development, 463 So.2d 1342 (La.App. 1st Cir.1984), writ denied, 465 So.2d 722 (La.1985). Any other analysis, including the no-cause analysis urged by DOTD, is unwarranted and contrary to the concepts of comparative fault which we must apply.
Indeed, DOTD's argument in the instant case is similar to the no-duty analysis urged by the defendants and rejected by the Louisiana Supreme Court in Socorro v. City of New Orleans, 579 So.2d 931, 941 (La.1991), and Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988). In two diving accident cases, the court expressly disapproved the no-duty argument which the defendants fell back upon after having failed to prevail on an assumed risk argument. The court explained that the defendant's duty is not to be defined in terms of the plaintiff's conduct:
Defendants suggest that ... they should not be liable because they had no duty to protect the decedent from a danger of which he had knowledge. In essence, defendants contend here that they were not negligent because the plaintiff voluntarily encountered the risk.... If accepted, defendants' argument would inject the assumption of risk doctrine into duty/risk analysis `through the back door.' By that, we mean that the argument attempts to define the defendant's initial duty in terms of the plaintiff's actual knowledge, and thereby seeks to achieve the same result which would be reached if assumption of risk were retained as a defense, i.e., a total bar to the plaintiff's recovery. (Emphasis in original.)
Murray, 521 So.2d at 1135-36.
Likewise, in the instant case, DOTD attempts to define causation solely by plaintiff's action, without consideration of the simultaneous causation stemming from defendant's inaction. DOTD seeks to achieve the same result that would be reached if contributory negligence were still a bar to recovery of damages under Louisiana law.
It would be incongruous for us to divide causation between plaintiff's action and DOTD's inaction in a one-event case, such as the instant one, when our courts, in cases where there were two separate events, have held that there can be more than one cause in fact, making both wrongdoers liable. For example, in Hastings v. Baton Rouge General Hosp., 498 So.2d 713 (La.1986), a young *613 man was taken into the emergency room with a stab wound to the neck, the first cause of his injury and subsequent death. The hospital's aborted attempt to transfer him to another hospital was a breach of duty constituting malpractice. The court held that "the question of whether the malpractice contributed to the death, i.e., lessened the chance of survival, is a question of fact for the jury.... A substantial factor need not be the only causative factor; it need only increase the risk of harm." (Emphasis supplied.) 498 So.2d at 720.
Indeed, one could make the no-cause argument in almost every case in which there were two or more negligent or strictly liable parties. For example, in the recent case of Hunter v. Department of Transportation and Development, 620 So.2d 1149 (La.1993), the decedent's vehicle was hit from the rear as he was waiting at a highway median to make a left turn; his vehicle was propelled in front of on-coming traffic, and he was killed. Using DOTD's analysis, one would conclude that the defendant driver's action and not the design of the highway and median was the sole cause of the accident. The Louisiana Supreme Court held otherwise, finding the highway department's inaction was a substantial cause of the accident and wrongful death. Were we to follow the ruling in Hunter and yet extend the rationale urged by DOTD to its logical conclusion in a bridge case, such as the instant one, we would hold DOTD liable if a vehicle were hit by another vehicle and propelled into the bridge railing, but we would not hold DOTD liable in a situation where the plaintiff's own negligence caused his vehicle to collide with the railing. Such an analysis is clearly a "back door" attempt to bar any recovery by a negligent plaintiff, and we reject DOTD's argument as contrary to the tort law of Louisiana as presently constituted.
We find Lang v. Prince, supra, directly on point here. In Lang two guest passengers were killed when a driver of a pick-up truck left the roadway and struck a utility pole that was located in the middle of an improved highway shoulder. The trial judge concluded that DOTD was negligent, and this court affirmed. Although DOTD urged that the fault of the driver relieved DOTD of liability, we found that the question on appeal was whether the pole at its location on the shoulder created an unreasonable risk of injury. Concluding that the unusual location of the pole was hazardous, we did not find that the driver's negligence was an intervening cause that would relieve the other defendants from liability. See also Tabor v. Doctors Memorial Hospital, 563 So.2d 233 (La.1990). Likewise, in the instant case, the negligence of the driver merely reduces, but does not bar, his own damages, and his negligence makes him solidarily liable with DOTD for his passengers' injuries.[4]
For another accident case similar to the instant case, see Efferson v. State through Department of Transportation and Development, supra. The driver and two passengers in a pickup truck brought suit for injuries received when the truck missed a curve on the River Road near Denham Springs, Louisiana. When the truck left the roadway, it made contact with a shoulder that sloped from the pavement toward two trees located approximately nine feet from the paved portion of the road. The truck struck one tree in the outside of the curve with its right rear fender, traveled a short distance farther, and struck another tree head-on.
In Efferson, 463 So.2d at 1349, we explained:
One may recover against the State on the basis of strict liability under La.C.C. art. 2317 by showing (1) that the thing which caused the damage was in the care or custody of the defendant, (2) that it had a vice or defect, i.e., some condition which occasioned an unreasonable risk of injury, and (3) that the injury was caused by the defect. Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980).
We held that the trees within nine feet of the road posed a "formidable obstacle for the inadvertent driver who found himself bearing down upon them." 463 So.2d at *614 1349. The fault of the driver in failing to keep his vehicle under control did not relieve DOTD of its duty to maintain a safe shoulder.
In Efferson, supra, we cited Sinitiere v. Lavergne, 391 So.2d 821 (La.1980) for the proposition that DOTD has a duty to see that the highways are reasonably safe for persons exercising ordinary care and reasonable prudence. We further concluded that "when the Sinitiere court wrote that the DOTD `owes a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists' (emphasis added) it did not mean to restrict the duty as being owed only to the non-negligent motorist." 463 So.2d at 1349. Finding that DOTD breached its duty to the negligent driver in Efferson, we apportioned fault between the department and the driver.
Turning now to the question of fault on the part of the driver, David Simpson, we note that the trial court's conclusion that he was without fault is inconsistent with some of the language delineating the court's factual findings. The court stated, in pertinent part:
During a sudden rainstorm and downpour, driver David Simpson lost control of the pickup truck, the pickup truck fishtailed and the truck bed swung around to the left causing the vehicle to broadside a bridge railing located upon the right hand side of the highway....
It is clear that the windshield wipers in the pickup truck were inoperative on the date and time in question, but I am unconvinced that the failure of the windshield wipers to work was a cause-in-fact of the accident in question.... Based upon the state of the evidence before the Court, the most logical and reasonable explanation for the sudden loss of control of the pickup truck by David Simpson was brake lockup causing hydroplaning of the vehicle. The driver's actions in reacting to a sudden cloudburst and deluge of rain was to brake the vehicle. This braking action caused the brakes to momentarily lock on the unloaded light weight pickup truck and caused the fishtailing action of the rear end of the pickup truck coming around to the left as a sudden and immediate response to the driver's braking action. Consequently, whether or not the windshield wipers of the pickup truck were in operation is of no moment in that it is more likely than not that David Simpson would have applied his brakes as a reaction to the sudden downpour in the same fashion that he did before attempting to turn on the windshield wipers.... (I)t is well recognized that the sudden application of brakes in an unloaded light weight pickup truck will cause fishtailing and possible loss of control. (Emphasis supplied.)
Apparently, the trial judge became so caught up in the question of inoperable windshield wipers that he failed to acknowledge that negligence stemmed from the action of the driver, however inexperienced, in applying the brakes under the existing conditions and circumstances. Accordingly, we find that the trial court's conclusion finding no fault on the part of David Simpson was manifestly erroneous.
Furthermore, we conclude in the instant case that fault should be apportioned between DOTD and Simpson.[5] We allocate 50% to DOTD, 50% to Simpson, as the highest degree of fault a reasonable finder of fact could have found for DOTD, and the lowest percentage a reasonable finder of fact could have found for Simpson. See Efferson v. State through Department of Transportation and Development, supra, at 1352. The driver in the instant case was inexperienced, but relatively "innocent" when compared to drivers in other cases who merited greater percentages of fault. Compare the driver in Efferson, who failed to see a speed advisory sign, had been drinking earlier in the evening, and was driving at an excessive speed when he entered the curve; his percentage of fault was 80%.
As to the claim by DOTD that the trial court erred when it failed to find *615 fault on the part of the two passengers, suffice it to say that the record does not reveal that the trial court's factual findings in this regard were manifestly erroneous. Although there is evidence that both passengers knew the windshield wipers were inoperable, the trial court could reasonably find that their failure to urge that the driver stop did not substantially contribute to the accident. We cannot replace our evaluation of the facts for the conclusion reached by the trial court. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La.1990).

QUANTUM
The remainder of DOTD's assignments of error relate to the trial court's awards of damages and costs, which we will address one at a time.
In making an award of $6,000,000 in general damages to David Simpson, the trial court described his injuries as follows:
Turning to the issue of damages as related to David Simpson, this 15 year old boy suffered traumatic amputation of both of his legs, a severe head injury and concussion, and emotional and psychological problems as a consequence of the profound injuries which he sustained. He will require life long prostheses, ongoing phantom pain, and serious physical and mental limitations. He will be unable to pursue work relating to his primary interests due to his physical impairment. Although his prognosis is good for training and entry into a sedentary occupation, he has poor prostheses tolerance, he has decreased standing tolerance in braces limited to 15 minutes, he has suffered weight gain, must suffer frequent voiding, is dependent in lifting and reaching, is unable to swim, hunt, do farm work, drive a tractor, water ski, cut grass, play football or softball, to participate fully with friends in activities, to perform mechanical work, to perform construction work, to perform welding jobs and is unable to dance. He will suffer a markedly decreased social life along with frequent anger, depression, irritability, a poor self-image and poor self-esteem. He has a decreased attention span, decreased memory, poor initiation skills, a decreased perceptual motor function, poor impulse control, a decreased ability to think abstractly, a low confidence level, a low motivation level, decreased learning potential, decreased fine motor control, decreased dexterity, decreased strength and endurance, and a low tolerance to pain and discomfort. Stated succinctly, he is a mere shell of the person that he once was and much of the enjoyment of life and life's expectations have been taken from him. Under these circumstances he is entitled to a general damage award in the amount of SIX MILLION DOLLARS.
In Hae Woo Youn v. Overseas Maritime Corp., 623 So.2d 1257 (La.1993), the most recent decision of the Louisiana Supreme Court addressing the standard for appellate review of general damage awards, the court continues a jurisprudential trend of constricting the standard. The trier of fact now has vast discretion to award general damages and the appellate court should rarely disturb a general damage award.
Our attempts to follow the guidelines for the standard for appellate review of general damage awards set forth in Gaspard v. LeMaire, 158 So.2d 149 (La.1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) and Reck v. Stevens, 373 So.2d 498 (La.1979) have been fraught with uncertainty. Not the least among the reasons for our uncertainty has been the repeated admonition that before a trial court award can be questioned as inadequate or excessive we must first and only look to the facts and circumstances peculiar to the case and the individual. We are instructed not to look to prior decisional awards in our determination of whether the trial court abused its discretion. By so limiting our consideration of prior awards in determining abuse of discretion, it seems to us that the determination is made on a highly subjective basis, leading to great disparity in awards by different courts for similar injuries. This necessarily makes it difficult for litigants to evaluate their claims, and appears to result in court resolution of disputes that might otherwise be resolved without litigation.
The trial judge here articulated the basis of the general damage award. We cannot *616 find from that articulation an abuse of the vast discretion of the trial judge.[6]
We find it necessary to reduce the award made to David Simpson by the trial court for future care expenses, which award included an amount for a paid attendant for home care. The trial court awarded $1,872,241 based on an assumption of four hours of care per day for the next 20 years and eight hours per day thereafter. DOTD is correct in asserting that the hours of care necessary was a mere assumption tendered by counsel to Dr. G. Randolph Rice, an economics professor who testified as an expert on behalf of plaintiff Simpson. In his brief, plaintiff Simpson admits that if he will never need more than four hours per day of attendant care, the figure for future care would be $1,497,204. Because an assumption of counsel is not evidence, we will reduce the future care award to $1,497,204. However, we find the remainder of DOTD's arguments for reductions in the awards to Mr. Simpson to be without merit.
Nor do we view the damage awards to Troy Lofton, Jr. and Robert Marc Huber as beyond the discretion afforded the trial court in LSA-C.C. art. 2324.1.
Appellant argues that the award of $250,000 to Mr. Lofton includes a sum for impairment to future earning capacity and that there is no evidence in the record of his capacity for future earnings. Despite appellant's argument, we find the explanation given by the trial court for the award to this plaintiff to be reasonable. The court stated,
Although Mr. Lofton was not a good student, and dropped out of high school, he has since received a GED. It is probable that this young man will look forward to a life of manual labor with a significantly weakened right leg. As he ages it is reasonable to expect that the problems attending the weakness resulting from this accident will exacerbate and affect his ability to earn and make a living.
We conclude that the award to Mr. Lofton was based on the trial court's assessment of the evidence in the record and thus within the trial court's discretion. We will not disturb a damage award absent a clear showing of abuse of discretion by the trial court. Bergeron v. Blake Drilling & Workover Co., Inc., 599 So.2d 827 (La.App. 1st Cir.), writ denied, 605 So.2d 1117 and 1119 (La.1992). Likewise, the award of $60,000 to Mr. Huber was not excessive in light of the fact that he was subjected to the severe trauma of the accident. Furthermore, considering the nature of the physical injuries to this high school student, we find that the award can be supported under an interpretation of the evidence most favorable to the plaintiff and that the award was a reasonable assessment made by the factfinder. O'Brien v. Remington Arms Co., Inc., 601 So.2d 330 (La.App. 2d Cir.), writ denied, 604 So.2d 1003 (La. 1992).
Thus, the appellant's assignment of error that the awards to the two guest passengers were excessive is without merit.
An assignment of error which does have merit is the appellant's objection to the loss of consortium awards to Gerald and Sally Simpson, the parents of the injured driver. The trial judge made no mention of an award to Mr. or Mrs. Simpson in his reasons for judgment, but he did pencil in an award of $50,000 each in the judgment for loss of "society and services." However, the record does not support such an award. The elements of a loss of consortium claim by parents are loss of love and affection, loss of society and companionship, loss of felicity, and loss of material services, support, aid and assistance. Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985). Our review of the record does not convince us that the parents in the instant case proved those elements by a preponderance of the evidence. They did not submit evidence that they were dependent upon their son materially, and they did not prove that they were deprived of his love and affection. Nor can the parents recover because of their mental anguish stemming from their son's injuries. Although the type of accident and injury to the young driver *617 would support a conclusion that his parents suffered mental anguish over his injuries, the awards to the parents were erroneous because their cause of action for loss of consortium does not include a claim for mental anguish suffered as a result of the physical injury to the other person. Sharp v. Metropolitan Property & Liability Ins. Co., 478 So.2d 724 (La.App. 3d Cir.1985). We, therefore, reverse the judgment in favor of Gerald and Sally Simpson against DOTD.
For the final question regarding quantum, DOTD pointed out in its brief that the trial court erred in rendering the three judgments because they are contrary to the statutory provisions of LSA-R.S. 13:5106 and LSA-R.S. 13:5112. However, considering the recent holding of the Louisiana Supreme Court in Chamberlain v. State through Department of Transportation and Development, 624 So.2d 874 (La.1993), that the $500,000 limit of general damages of LSA-R.S. 13:5106 is unconstitutional, we cannot so limit the general damage award.
Nevertheless, all three judgments are subject to the statutory provision of LSA-R.S. 13:5112 making pre-judgment interest payable at the rate of six percent. Although LSA-R.S. 13:5112 was one of six statutes enacted by the legislature in 1985 to relieve the state of some of the ordinary burdens of tort liability, the Louisiana Supreme Court has specifically pointed out that it has not considered the constitutionality of LSA-R.S. 13:5112. See Chamberlain, supra at note 7. Accordingly, we amend the judgments to provide for interest at the rate of six percent from the date of judicial demand until the date of judgment, then at the rate provided in LSA-C.C. art. 2924 from the date of judgment until paid.
DOTD's final complaint concerns costs of court. The trial court held a separate hearing on costs and provided us with detailed reasons for the judgment rendered subsequent to the hearing. We note a duplication in one item: the award of $1,320 for Michael V. Aderman was listed previously as an award in the Lofton judgment. Accordingly, we will reduce the total of costs from $12,766.83 to $11,446.83 to reflect a deduction for duplication. Furthermore, because of our holding on comparative fault, we amend the judgment for costs, casting DOTD for 50% of the total of $11,446.83 and David Simpson for 50% of the total.
Appellant's argument that the trial court erred in considering hearsay invoices at the hearing on costs is without merit.
In summary and for the foregoing reasons, we amend the judgment in favor of David Simpson to reduce the award for future medical care to $1,497,204. We also amend the judgment of the trial court in favor of the driver, David Simpson, and against DOTD, reducing the awards in the driver's favor by 50% to reflect the fault attributable to him.
Likewise, we amend the Lofton and Huber judgments to cast DOTD and David Simpson liable in solido, in the proportions of 50% and 50% respectively, for damages and costs.
We amend all three judgments to reflect interest owed by DOTD at the rate of six percent from the date of judicial demand until judgment, and statutory legal interest thereafter. We reverse the judgment in favor of Gerald and Sally Simpson for loss of consortium, and we dismiss their claim against DOTD.
We amend the judgment on rule for costs to reduce the total to $11,446.83, and we cast DOTD for 50% of the costs and David Simpson for 50% of the costs.
In all other respects we affirm the judgments of the trial court. Costs of this appeal are to be assessed against appellee, David Simpson.
REVERSED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED.
WATKINS, J., concurs in part and dissents in part and assigns reasons.
GONZALES, J., dissents and assigns reasons.
WATKINS, Judge, concurring in part and dissenting in part.
I concur in the majority opinion with the exception of its affirmation of the trial court's award of $6,000,000, for general damages.
*618 I agree fully with the majority that our attempts to apply the guidelines for the standard for appellate review of general damage awards has led to great disparity in awards by different courts for similar injuries. If we are to pursue the ideal of equal justice under law, as we are obligated to do, we must be permitted to use the objective norm of prior awards as one of the factors to be weighed in our consideration of the correctness of a general damage award.
Notwithstanding the above, I believe the majority erred in its application of the standard for appellate review in this case, because they felt the standard precluded them from considering prior awards in determining whether the trial court abused its discretion in awarding $6,000,000 for general damage. In Reck v. Stevens, 373 So.2d 498 (La. 1979), one of the seminal cases in our jurisprudence relative to the standard for appellate review, we find an exception to the rule prohibiting consideration of prior decisional awards. This exception provides that an examination of prior awards has a limited function, if the facts and circumstances of the prior awards are closely similar to the present case. Reck v. Stevens, states:
The prior awards may serve as an aid in this determination only where, on a articulated basis, the present award is shown to be greatly disproportionate to the past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries, see Coco at 341 So.2d 334.
Although I am unable to find cases quantifying injuries which are truly similar to the injuries suffered by the plaintiff,[1] experience and reason tell me that in this situation a court is not prohibited from considering the mass of cases where the injuries suffered are truly more crippling and life threatening.
Indeed, the injuries suffered by the plaintiff, David Simpson, are severe and disabling. However, as noted below, he is still able to function and perform many tasks. In these circumstances I believe that this particular plaintiff is able to attain a quality of life which is unattainable for persons who suffer hopeless injuries which leave them paralyzed or brain damaged. He has the use of the stumps of his legs and the use of his arms. Since the accident, he has married and has fathered a child. Considering the ability of David Simpson to function in society despite his very serious injuries and permanent handicap, I must conclude that the trial court abused its much discretion in awarding him $6,000,000 in general damages. A consideration of the mass of past awards for victims who suffered quadriplegia and severe brain damage, in my view clearly more grievous and disabling, compels me to reach this conclusion.[2]
I believe the highest amount a reasonable factfinder could have awarded to David *619 Simpson would have been $3,750,000. (Compare the two amputees in the case of Bergeron v. Blake Drilling & Workover Co., 599 So.2d 827 (La.App. 1st Cir.), writs denied, 605 So.2d 1117 and 1119 (La.1992); we concluded it was not an abuse of the jury's discretion to award $3,750,000 to a worker who lost one leg, one hand, and part of an arm, as well as suffering injuries to both eyes; nor was it an abuse of discretion to award $1,500,000 to a worker who lost one leg below the knee and part of his other foot, as well as suffering multiple shrapnel wounds.)
GONZALES, Judge, dissenting.
The ruling of the majority in this case substantially changes the law. It redefines cause-in-fact in tort cases against the Department of Transportation and Development. It substitutes "cause of injury" for cause-in-fact of the accident or event.

THE CAUSE-IN-FACT ANALYSIS
The determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). (Emphasis added.) Fowler v. Roberts, 556 So.2d 1, 4 (La.1989); Roberts v. Benoit, 605 So.2d 1032, 1051 (La.1991) (on rehearing).
The but-for test for factual causation is well recognized in Louisiana law and all other jurisdictions. See Prosser & Keeton on The Law of Torts (5th ed. 1984). If the collision would have occurred irrespective of (but-for) the negligence of DOTD (failure to maintain the bridge), then its negligence was not a cause-in-fact. Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (La.1962). The experts from both sides supply the answer to what would have happened absent the negligence of DOTD; this is to be discussed later. They not only agree, but there is absolutely no evidence to contradict their common sense evaluations, that a fatal accident probably would have resulted. Absent DOTD's negligence in failing to fix the bridge railing, its negligence did not cause or contribute to the emergency situation. The injuries suffered by Simpson and his passengers were the effect of the accident, not the cause of it. See Hammer v. City of Lafayette, 502 So.2d 301, 303 (La.App. 3d Cir.1987).
The cases cited by the majority in support of its multiple causation theory are all easily differentiated from the case sub judice. In those cases, if the negligence of the defendant is removed, the accident or event does not occur. For example, in Hunter v. Department of Transportation and Development of State of Louisiana, 620 So.2d 1149 (La.1993), cited by the majority, there was a defective road design which was one of the causes of the accident. "[The plaintiff's expert] testified that if there had been a place of refuge for Hunter's turning vehicle, either in the form of a left turn lane or a median of sufficient width, the accident in all probability would have been avoided." 620 So.2d at 1152. This is a classic but-for analysis that removes the defective road design and finds that the accident would not have occurred. In Lang v. Prince, 447 So.2d 1112 (La.App. 1st Cir.), writs denied, 450 So.2d 1309, 1311 (La.1984), also cited by the majority, a pickup truck left the roadway and struck a utility pole which was located in the middle of an improved highway shoulder. This again, was a defect in the road shoulder which contributed to the accident. If the utility pole is removed from the middle of the highway shoulder, the accident would not have occurred. Therefore, the utility pole was a cause-in-fact of the accident. In Efferson v. State Through Department of Transportation and Development, 463 So.2d 1342 (La. App. 1st Cir.1984), writs denied, 465 So.2d 722 (La.1985), also cited by the majority, a defective shoulder contributed to the accident. If the defective shoulder is removed, *620 the accident would not have occurred. Assessing liability for "causes" of an accident which do not pass the but-for analysis redefines cause-in-fact as an element of liability in a single car collision in a suit against DOTD. Failing the but-for test should be enough to defeat plaintiff's claim unless new law is fashioned or some other valid test is applicable. There is no doubt that an accident, even a one car collision, can be the result of multiple causes. However, a finding of multiple causation can only be made after each alleged causative fact is subjected to and passes the cause-in-fact (but-for) analysis.
In analyzing cause-in-fact in a multiple causation setting, the facts of the particular case must be kept clearly in mind. In the case at hand, Simpson's vehicle struck the guardrail broadside after sliding sideways on a rural road for seventy-four feet with enough force to sheer off ten of the twelve posts supporting the guardrail. Below the bridge was a stream with a very high embankment in the obvious path of a vehicle rolling over the guardrail. One cannot determine from the majority opinion if the court is finding liability for failure to retrofit the bridge end treatment or for negligence in failing to maintain the existing standard of guardrail end configurations. It is very important to know this in light of the testimony of the experts on both sides of the case.[1]
Dr. Olin Dart, the state's expert, testified that a very serious accident would have occurred regardless of the condition of the guardrail because of the position of and force to the Simpson vehicle. A fair reading of the deposition of Professor Andrew J. McPhate, the plaintiff's expert, reveals that the spearing actually prevented the truck from rolling over and falling into the hazard below. He further opined that, had the truck rolled, the occupants would have been killed. See McPhate deposition, pages 54-55. Ironically, the defect, while being the instrumentality of serious injury, also prevented even greater harm. The causative factor attributable to DOTD by the majority, reduced rather than enhanced the plaintiff's injuries, or conversely, enhanced rather than reduced the chance of survival.[2] Since there is no *621 factual support in the record for it, there can be no reliance on the enhancement theory. The majority cites Hastings v. Baton Rouge General Hospital, 498 So.2d 713, 720 (La. 1986), for the statement that "[a] substantial factor need not be the only causative factor; it need only increase the risk of harm." However, Hastings does not apply herein because in Hastings, there were successive and separate causes of the injury. The first cause was the stab wound to the plaintiff's neck. The later, separate injury (the hospital's aborted attempted to transfer him to another hospital) lessened the chance of survival. But for the later, separate injury, the decedent would have had a greater change of surviving his original injury. Also cited by the majority is Tabor v. Doctors Memorial Hospital, 563 So.2d 233 (La.1990). Tabor was also a multiple cause-in-fact case. A cause of Andy Tabor's death was "a self-inflicted gunshot wound to the heart." The Supreme Court also found that the conduct of Dr. Dunn, the physician who failed to admit Tabor into the hospital, was a cause-in-fact of Tabor's death and lessened his chance of survival, citing the rationale used in Hastings.
These cases, Hastings and Tabor, do not involve an enhancement of injuries; they are actually cases concerning the loss of a chance of survival. They simply have no relevance in theory or fact to the case sub judice. Given the situation of the Simpson truck immediately prior to impact, a serious accident and serious injury were inevitable.
The plaintiff spent an enormous amount of time and expense trying to convince the trial court that DOTD had a duty to retrofit the guardrail end treatment to meet interstate standards. He did this obviously because he realized he could not meet the cause-in-fact test if the duty of DOTD was only to repair. There is insufficient evidence in the record to support such a duty and the majority does not clearly say it finds such a duty. To find a duty to retrofit would require reversing Myers v. State Farm Mutual Automobile Insurance Company, 493 So.2d 1170 (La. 1986), which held that DOTD had no such duty. If such a duty were found, the plaintiff could then argue his negligent conduct would not have been a cause of the injury because, even for his out of control vehicle, no injury would have resulted, had there been a fully crashworthy end treatment. The majority's reliance on Rick v. State, Through Department of Transportation and Development, 619 So.2d 1149 (La.App. 1st Cir.), writs granted, 625 So.2d 1049 (La.1993), is equally misplaced. The rationale of the duty in Rick was the fact that DOTD had specifically undertaken to upgrade or retrofit the railroad crossing in question. Their negligence was founded on an unreasonable delay in doing so. No such assumption of duty exists here and even that theory has been challenged on writs.[3]

THE SUBSTANTIAL FACTOR TEST
Neither the trial court nor the majority found that the negligence of DOTD was a cause-in-fact of the accident (event) by using the but-for analysis. Both courts rely on the so-called substantial factor test of causation.[4] Neither court mentions the testimony of the plaintiff's expert in this regard.
Sometimes courts say that the test for cause in fact is the substantial factor test and then proceed to define the substantial factor test as identical to the but-for test. Such phrasing is commonplace and by itself is not particularly confusing. But why introduce a new term (substantial factor) into the cause-in-fact discussion and then promptly define the new term as adding nothing new? (Footnote omitted.) *622 David W. Robertson, Exploring Cause in Fact, University of Texas (1992), p. 37, citing Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298, 302 (La.1962).
In the more traditional sense, the substantial factor test can only be utilized in limited circumstances. The requirements for use of the substantial factor test in this traditional sense are that (1) there are concurrent causes of an event that produce an identical result and (2) the but-for analysis fails to supply an answer to the causation inquiry. If the majority is using substantial factor as an alternative to but-for, then in applying it to the causative conduct of DOTD, the test is not accurately applied. What criteria justify the traditional use of the substantial factor test? Prosser & Keeton pose the proper use of the substantial factor test as follows:
Restricted to the question of causation alone, and regarded merely as a rule of exclusion, the "but for" rule serves to explain the greater number of cases; but there is one type of situation in which it fails. If the two causes concur to bring about an event, and either of them, operating alone, would have been sufficient to cause the identical result, some other test is needed. Two motorcycles simultaneously pass the plaintiff's horse, which is frightened and runs away; either one alone would have caused the fright.... The defendant set a fire which merges with a fire from another source; the combined fires burn the plaintiff's property, but either would have done it alone. In such cases it is quite clear that each cause has in fact played so important a part in producing a result that responsibility should be imposed upon it; it is equally clear that neither can be absolved from responsibility on the ground that their identical harm would have occurred without it, or there would be no liability at all. (Footnotes omitted, emphasis added).

Prosser & Keeton on The Law of Torts, § 41 at 266.
It is obvious from considering examples set forth by Prosser & Keeton that applying the but-for analysis to the concurrent causes in those examples fails to yield an answer. It is equally obvious that in those examples the causes produce an identical result. In these limited types of cases, it is appropriate to apply the substantial factor test. Prosser & Keeton point out that the Minnesota Supreme Court, which was one of the earliest to adopt a substantial factor rule, did this in the case of Anderson v. Minneapolis, St. Paul & Sault Ste. Marie Railway Company, 146 Minn. 430, 179 N.W. 45 (Minn.1920), wherein two fires of separate origin combined to cause damage. Prosser & Keeton later describe the substantial factor rule as follows:
The substantial factor rule was developed primarily for cases in which application of the but-for rule would allow each defendant to escape responsibility because the conduct of one or more others would have been sufficient to produce the same result. (Footnote omitted.)

Prosser & Keeton on The Law of Torts, § 40 at 260.
The Restatement (Second) of Torts § 432(2) gives a similar definition:
[T]wo forces are actively operating one because of [defendant's] negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about [the] harm to [plaintiff].
Wex S. Malone, noted authority on torts, states the following analysis in the often quoted Ruminations On Cause-in-Fact, 9 Stan.L.Rev. 60, 88-89 (1956):
One group of situations where courts have felt themselves obliged to reject the but-for test is familiar to every first-year law student: Two noisy motorcycles simultaneously pass the horse on which plaintiff is riding, frightening the animal and causing it to run away and injure plaintiff. Neither cyclist in such a situation can escape liability by showing that the noise made by the other would have produced the same result alone. Similarly, a fire started through the negligence of a railroad may merge with a fire of undetermined origin and the two together destroy plaintiff's property. Under such facts the wrongdoer will not be allowed to show that his fire was not a cause by establishing that the other fire would have destroyed the property even without his participation. Our senses have told us that he *623 did participate. We are not obliged to make deductions in order to reach this conclusion. In the language of the layman, the defendant's fire "had something to do with" the burning of plaintiff's property. The affinity between his conduct and the destruction is recognized as being close enough to bring into play the well-established rules that prohibit the setting into motion of a destructive force. The but-for test has failed in such cases to justify itself policywise, so we search for other language that will allow us to do what we feel is right and proper. We demand that we be allowed to judge as we observe. Drama has triumphed over the syllogism.
In the combined force cases courts do not abandon the effort to define cause. They merely re-establish the point of acceptable affinity between misconduct and loss lower on the scale. There must be evidence that the force set in motion by defendant was a "substantial factor" in bringing about the damage before the cause issue will be submitted to the jury. (Footnotes omitted.)
However, the more important authority is found in the jurisprudence of this circuit. In Magee v. Coats, 598 So.2d 531, 536 (La.App. 1st Cir.1992), this Court in addressing the issue of when the substantial factor test is appropriate says as follows:
When two causes concur to bring about an event, and either cause operating alone would have brought about the event absent the other cause, the appropriate test is the "substantial factor" test. (Emphasis added.)
It is clear by reviewing the facts, that it is not true that either cause in the present case (the failure to maintain the bridge railing on one hand and the negligent driving of the plaintiff on the other hand) would have brought about the event. Only one of these causes brought about the event. But for the fault of Simpson, the accident would not have occurred; thus the but-for test does provide an answer. Resort to the substantial factor test is inappropriate.
Additionally, the causative factors of the two parties alone would not have produced the identical result. Multiple causes can bring about an identical result.[5] Remove the conduct of DOTD, and the truck violently hits the rail broadside, and according to Professor McPhate, rolls over into the hazard below. A simple view of photograph number 27, entered into evidence by the plaintiffs, reveals a high embankment into which the vehicle would have crashed were it not for the spearing effect of the guardrail. The predicted death of the three passengers is not the same result as the injuries involved.[6] Thus, there is no reason to say the but-for test fails in this case, justifying the use of another test. It is clear, therefore, that the majority's improper use of the substantial factor test redefines cause-in-fact and is legal error.

CAUSE-IN-FACT: PLAINTIFF'S THEORY
Although the trial court and the majority couch their ruling in substantial factor language, all the cases relied on by the majority and the plaintiff are true but-for cause-in-fact cases. In brief, Simpson claims that "the Highway Department has been held liable a number of times when a vehicle struck other objects beyond the travel lane, even though *624 the defect had nothing to do with the vehicle leaving the roadway and striking the object." Simpson cites Bethea v. Louisiana Department of Transportation and Development, 415 So.2d 535 (La.App. 1st Cir.1982). However, in Bethea, the court found "[a]ll of DOTD's witnesses were in agreement that a drop-off of more than two inches creates a dangerous condition. Here, there is no serious argument that the drop-off was approximately five inches and had existed along the curve for some time prior to this accident." The appellate court affirmed the trial court's conclusion that "the poor condition of the shoulder of the road was a cause of the accident ..." 415 So.2d at 538. Bethea is a defective road shoulder case. In Bethea, the object the driver hit (a tree) did not determine causation or liability; rather, it was the condition which caused the loss of control (the road defect) which determined causation and liability. If the road defect in Bethea is removed the accident does not occur. Plaintiff cites Bethea for the proposition that the "[t]ree sixteen feet from roadway which driver struck, was too close." That was not the finding of the Bethea court. Plaintiff cites Bethea for the statement "DOTD has a duty to remove obstacles which are dangerously close to the traveled portion of its highways," which statement the Bethea court attributes to Wilson v. State, Through Department of Highways, 364 So.2d 1313 (La. App. 3d Cir.1978), writ denied 366 So.2d 563 (La.1979). However, Wilson does not stand for the quoted proposition. In Wilson, the facts were that plaintiff was "[d]riving on Louisiana Highway 28 near the community of Hicks, [when] the truck collided with a large pine tree which was lying completely across the highway." 364 So.2d at 1315. The court stated "[i]t is obvious that a highway with a large pine tree completely across it is not `reasonably safe' for the motoring public." 364 So.2d at 1316. Wilson did not address objects lying close to the traveled portion of the roadway, but rather an object lying across the roadway.
Simpson also cites Johnson v. State, Department of Transportation and Development, 497 So.2d 768 (La.App. 3d Cir.1986), writ denied, 501 So.2d 231 (La.1987), Trahan v. State, Department of Transportation and Development, 536 So.2d 1269 (La.App. 3d Cir.1988), writ denied, 541 So.2d 854 (La. 1989), Rachal v. State, Department of Transportation and Development, 505 So.2d 999 (La.App. 3d Cir.), writs denied, 508 So.2d 68, 76 (La.1987), Guillotte v. Department of Transportation and Development, 503 So.2d 618 (La.App. 4th Cir.1987), and Adams v. Department of Transportation and Development of State of Louisiana, 536 So.2d 476 (La.App. 1st Cir.1988). In every one of these cases, the but-for test applies, and by eliminating the negligence of the defendant, the accident or event does not occur. In all of the authorities cited above and in all of the jurisprudence relied upon by the majority and by Simpson, the but-for test for cause-in-fact is used; this is also the controlling law in this Circuit. See Magee v. Coats, 598 So.2d 531 (La.App. 1st Cir.1992). Failure to utilize this same test in this case makes a significant change in the law.

CAUSE-IN-FACT: THE MAJORITY'S THEORY
Not only does the majority fail to use the proper test for causation, but it does not really face the difficult cause-in-fact problem presented. The majority says:
Nevertheless, DOTD argues on appeal that its liability is barred because the condition of the bridge, however defective, was not the cause of the driver's losing control of his vehicle. We find such an analysis of causation questionable. This case involved one, and only one, unfortunate eventa collision of the truck with the bridgeand the actions of the driver and the inaction of DOTD combined to cause the event. Any other analysis, including the no-cause analysis urged by DOTD, is unwarranted and contrary to the concepts of comparative fault which we must apply. (Citation and footnote omitted, emphasis added.)
Contrary to the above language by the majority, the concepts of comparative fault have not changed Louisiana's law on causation. See Roberts v. Benoit, 605 So.2d 1032; Fowler v. Roberts, 556 So.2d 1; and Prosser & Keeton on The Law of Torts, § 67 at 475. The above cited language of the majority *625 merely substitutes the word "event" for the word "accident." The word "event" is simply a broader concept and is the word used by Prosser and Keeton in discussing but-for as the test for cause-in-fact (as noted above).
There are several duties, breaches of duty and causative elements in this case. The plaintiff owed a duty to maintain control of his vehicle, which he breached, and this breach was a cause of the accident or event, which in turn caused the injury. DOTD had a duty to construct and maintain a guardrail which would prevent a negligent motorist from falling into the hazard protected by the guardrail. This duty was not breached according to the testimony of Professor McPhate. Since the vehicle did not crash into the stream, there was no cause of injury. DOTD also owed a duty to maintain the safety device (guardrail) so as not to create a new and unreasonable risk of harm. In allowing the exposed end to face oncoming traffic, DOTD breached its duty by its knowing inaction. This breach was not a cause-in-fact of the accident, even though it was an instrumentality or cause of the injury.
It is difficult to imagine a situation in which the cause of the event, episode, or accident does not lead to the particular damages, harm, or injury in question. Simpson's causative conduct certainly did. Does "cause of injury" standing alone equal cause-in-fact? DOTD cites eighteen (18) cases of the Louisiana Supreme Court where cause-in-fact means the cause of the accident. No case has been cited or found where the cause of the injury substitutes for cause-in-fact of the accident. This is a change in our law and opens the door for a whole new development in our tort law. The smoker who purchases and uses cigarettes is the cause-in-fact of the event of smoking, even though the ingredients in the cigarette may be the cause of the injury. In Roberts, the plaintiff was injured by a non-defective bullet. The cause-in-fact of the accident was Benoit, who shot the gun, but the cause of injury was the bullet. If a defective bullet caused a wholly different injury, would that damage be compensable against the possessor or manufacturer of the bullet? Focusing on cause of injury, to the extent of substituting it for the cause of the accident or event, as the majority does here, opens an entire new area of tort litigation.

THE PIERCING CASES
In the present case, the trial judge stated in his reasons for judgment:
In fact, considering the department's prior knowledge of other similar accidents with similar bridge railings, this negligence of the department is almost criminal in nature.
This statement infers that there is a plethora of piercing cases of which DOTD was aware. There is only one such accident in the record, and my research reveals only two other cases in this state similar to this one, where a guardrail pierced the passenger area of a vehicle. The first is a district court case (the reasons for judgment were entered into the record by plaintiff as a proffer), Porter v. State, Through the Department of Transportation and Development, No. 44,667, 21st Judicial District Court. In that case, the trial judge found:
... the shoulder of the road was grassy and thus afforded less traction and less opportunity for recovery than would have shoulders composed of aggregate, as required by the Highway Department's earliest available minimum standards. Second, in this regard, these same minimum standards stipulated that shoulders on a highway such as that traveled by Mr. Porter should be at least eight feet and perhaps ten or twelve feet wide ... this section of insufficient shoulder was an unreasonably dangerous condition, constituting a defect in the highway, and as reflected by notations on its inspection reports, the Department had actual knowledge of the insufficiency of the shoulder....
The liability in Porter resulted from the road shoulder defect, not the condition of the bridge guardrail.
A second similar case is an unreported one from this court, Hatch v. The City of Baton Rouge, 592 So.2d 6 (La.App. 1st Cir.1991). In Hatch, an oncoming driver traveling in the plaintiff's lane of travel at night with his headlights on caused plaintiff to leave the highway and strike the bridge railing. The *626 bridge railing penetrated the car's interior, killing one occupant and injuring another. The trial court found the cause of the collision was the encroaching of the oncoming vehicle into the plaintiff's lane. No negligence was found on the part of the governmental entity for the condition of the bridge rail or the placement of the hazard marker. On appeal, this Court affirmed that decision.
The third bridge railing case of which I am aware of is Lognion v. Calcasieu Parish Police Jury, 503 So.2d 1092 (La.App. 3d Cir.), writ denied, 507 So.2d 227 (La.1987). In Lognion, the plaintiff was driving on a gravel road, approaching a bridge, when he encountered ridges in the road and lost control of his vehicle. The vehicle veered to the left, striking the bridge, and the impact caused the bridge railing to pierce through the front of the vehicle, pinning plaintiff in the vehicle. On appeal, the court found that the police jury was not liable under La.C.C. art. 2317, because the ridges in the roadway were not defects rendering the road unreasonably dangerous, but ordinary hazards which were to be expected on rural, gravel, non-primary parish roadways. The appellate court also found that plaintiff did not carry the burden of proving that the bridge, built between 1949 and 1959, was defective, that is, unreasonably dangerous. The appellate court did not find that the police jury was liable under La.C.C. art. 2315, for failure to properly maintain the gravel road by adequate grading.
Porter and Lognion are actually road defect cases. Therefore, rather than a wealth of cases, there is no case that I can find that predates this case where DOTD was found to be liable because a bridge guardrail was found to be an unreasonably dangerous risk of harm.
Additionally, I agree with Judge Watkins that the damage award is so high as to shock the conscience of this Court.
For these reasons, I respectfully dissent from the majority opinion.

ON APPLICATIONS FOR REHEARING
Plaintiff, Patricia R. Milton, and defendant, State of Louisiana, through the Department of Transportation and Development, have filed Applications for Rehearing in the instant case. Because we find merit in some of their assertions, we grant a rehearing for the limited purpose of making corrections in pertinent part to our original opinion.
Plaintiff, Patricia Milton, individually and as natural tutrix of her minor son, Robert Huber, urges us to change that part of the opinion we rendered on December 7, 1993, relating to the rate of interest permissible under LSA-R.S. 13:5112 to conform to an opinion of the Louisiana Supreme Court rendered January 14, 1994, declaring that statute unconstitutional, Rick v. State, Department of Transportation and Development, 630 So.2d 1271 (La.1994). We agree that Rick requires us to change our opinion. Accordingly, we vacate that portion of our opinion amending the three judgments to provide for pre-judgment interest at the rate of six percent, and we reinstate the portions of the trial court judgments providing for pre-judgment interest.
Defendant, State of Louisiana, Department of Transportation and Development, filed for a rehearing on the issues of liability and quantum only. After considering defendant's arguments, we are convinced our only error was our failure to mention DOTD's right to contribution pursuant to the cross claim it had filed against co-defendant David Simpson. Accordingly, we replace the language whereby we amended the Lofton and Huber judgments to cast DOTD and David Simpson "liable in solido, in the proportions of 50% and 50% respectively for damages and costs" to read as follows:
We amend the Lofton and Huber judgments of the trial court to cast DOTD and David Simpson liable in solido, recognizing their respective proportions of fault as 50% and 50%, and likewise decreeing DOTD's entitlement to contribution from David Simpson, third-party defendant, for his virile portion of the total judgments rendered in favor of plaintiffs.
In all other respects, we reject DOTD's motion for rehearing.
REHEARINGS GRANTED IN PART, DENIED IN PART.
*627 WATKINS, J., concurs in the above but is of the opinion that the rehearing should have been granted to reconsider the general damage award to Gerald Simpson.
NOTES
[1] The three boys were minors at the time of the accident, but now they have reached the age of majority. David Simpson was substituted as party plaintiff in his amended petition, and Troy Lofton, Jr., was substituted as plaintiff in his suit, except for the claim by his father for past medical expenses.
[2] The plaintiffs argued that the wing rails were unreasonably dangerous, making DOTD liable for not retrofitting the bridge with a safer railing. Indeed, a maintenance engineer for DOTD's District 62 testified that the bridge railing that pierced the truck in this case was replaced after the accident with railings that ended with a "flared out piece," or short, curved rail sections that eliminated the 45-degree angle welded joints. It is unnecessary for us to decide whether the wing rails were unreasonably dangerous per se because of the poor condition of the bridge and the railing discussed hereinafter.
[3] DOTD's major assignments of error are that the trial court erred in failing to find that the sole cause-in-fact of the accident was the driver's inability to maintain control of the vehicle and that the sole legal cause was the driver's negligence in failing to maintain control.

An additional assignment of error is that the trial court erred in failing to allow into evidence Page 20 of the deposition of Robert Marc Huber.
Further, DOTD assigns more errors "alternatively" in the event that the liability of DOTD is affirmed on appeal. The alternative assignments are:
1. The trial court erred in failing to find that the driver was contributorily negligent and/or strictly liable.
2. The trial court erred in failing to find that the guest passengers were contributorily negligent.
3. The trial court erred in granting an excessive damage award to the driver, David S. Simpson.
4. The trial court erred in granting an excessive damage award to Troy Lofton, Jr. and Robert Marc Huber.
5. The trial court erred in dismissing the cross-claims of DOTD in the Lofton and Milton cases.
6. The trial court erred in granting and setting expert witness fees and other costs that were taxed against DOTD in the Simpson and Lofton cases.
7. The trial court erred in signing judgments in all three (3) consolidated cases that failed to conform to either LSA-R.S. 13:5106 and/or LSA-R.S. 13:5112.
[4] See discussion of David Simpson's negligence, infra. Our decision regarding solidary liability makes it unnecessary for us to discuss DOTD's assignment of error that the trial court should not have dismissed the cross-claims of DOTD in the Lofton and Milton cases.
[5] Our decision to reverse the trial court on the issue of David Simpson's negligence makes it unnecessary for us to address DOTD's assignment of error concerning Marc Huber's deposition. Although the testimony was about the nature of the rain storm, it was merely cumulative evidence relating to the driver's negligence vel non.
[6] Although we do not reach a consideration of prior awards we do note Bernard v. Royal Ins. Co., 586 So.2d 607 (La.App. 4th Cir.1991) awards general damages of $5,025,000 for a severe continuing leg injury.
[1] Although there are numerous cases involving the loss of one leg, I do not consider these to be "truly" similar injuries to the plaintiff's loss of both of his legs.
[2] See Socorro v. Orleans Levee Bd., 561 So.2d 739 (La.App. 4th Cir.1990), modified, 579 So.2d 931 (La.1991) (subject to the limitations set in LSA-R.S. 13:5106(B)(1) the court affirmed award of $3,500,000 in general damages for plaintiff who suffered permanent quadriplegia with neurotic bladder); Bernard v. State Through DOTD, 563 So.2d 282 (La.App. 4th Cir.1990), overruled on other grounds by Socorro v. Orleans Levee Bd., 579 So.2d 931 (La.1991) (subject to the limitations set in LSA-R.S. 13:5106(B)(1), the court affirmed a general damage award of $3,000,000 to plaintiff who became a C5-C6 level quadriplegic as a result of an auto accident), Mullet v. State Through DOTD, 539 So.2d 897 (La.App. 4th Cir.1989), overruled on other grounds by Socorro v. Orleans Levee Bd., 579 So.2d 931 (La.1991) (subject to the limitations set in LSA-R.S. 13:5106(B)(1) the court awarded $3,000,000 in general damages for plaintiff who suffered partial paraplegia, as well as numerous other injuries); Allemand v. Zips Trucking Co., Inc., 552 So.2d 1023 (La.App. 1st Cir.1989), writ denied, 558 So.2d 569 (La.1990), (court affirmed a general damage award of $2,200,000 for severe closed head injury with possible cridriform platefracture and a right temple lobe hematoma in addition to facial trauma and corneal abrasion); Johnson v. Kansas City Southern Ry. Co., 531 So.2d 773 (La.App. 3d Cir.), writ denied, 534 So.2d 445 (La.1988) (court awarded $2,000,000 in general damages for plaintiff who suffered severe brain damage which rendered him a permanent quadriparetic).

I am aware of Bernard v. Royal Ins. Co., 586 So.2d 607 (La.App. 4th Cir.1991), wherein the court reduced a general damage award for a severe continuing leg injury from $6,525,000 to $5,025,000. However, this award is not representative of the mass of awards for injuries which are similar or more severe.
[1] Defendant's expert, Dr. Olin Dart, testified as follows:

Q. Okay. Now, was there evidence to you, from viewing the photographs of the pickup truck, the damage done to the pickup truck, that the pickup truck, when it struck the bridge end, had begun to roll or flip over?
A. It was leaning down into thethe water way area, yes.
Q. No, I'mI'm justI'm wondering if you if you recall, from looking at the photographs, whether or not, or if youyou did any work in that area, to determine from a reconstruction standpoint, whether or not the vehicle appeared to be, at impact, oror a fraction of time after the impact, thatthat initially, it may have started to turn over, but of course, the bridge rail punctured thethe door.
A. I would expect it to, because the front wheels are dropping off of the wing wall, prior to the impact with the rail.
Q. Okay, so,well, let me see if I understand it. Is it fairis it accurate to say that if the bridge rail had not speared or punctured the vehicle, that the vehicle would have rolled, or flipped?
A. Yes, more that likely.
Plaintiff's expert, Professor Andrew J. McPhate, testified as follows:
A. And it indicates, if you'll look at one of these other photographs whichin conjunction with this, and it may be slightly significant of the passenger side. Okay. Passenger side of the vehicle. If you'll notice on the passenger side of the vehicle that the seat is plowed up.
Q. Okay.
A. Okay. That is the seat is torn up; you can see it torn up here in "70." That was "53" and "70."
Q. Yes.
A. Indicates that in all likelihood the pick-up truck rolled up a little bit during the very first part so thatthat it was probably cocked up a little bit andand
Q. In other words, it started to almost flip over or it
A. It was starting
Q. did flip over?
A. to flip over and at the time that it hit it and thatthat thing speared on through
Q. And straightened it back out?
A. andand went probably, and that's the reason why these other guys weren't killed, is that probably went underneath them.
[2] As stated by Justice Cole in Roberts v. Benoit, 605 So.2d 1032, 1052 (La.1991) (on rehearing), "Nonetheless, inasmuch as the sheriff's actions can be said to have appreciably enhanced the chance of the accident occurring, they are a cause-in-fact of the accident." (Citations omitted.)

An example of an enhancement of injury case is found in Mickle v. Blackmon, 252 S.C. 202, 166 S.E.2d 173 (1969). In Mickle, plaintiff was a passenger in an automobile which was an involved in an accident at an intersection where the stop signs had been removed. Her injuries were enhanced when the gearshift knob in the automobile stabbed her through the back. See also Moore v. Chrysler Corp., 596 So.2d 225 (La. App. 2d Cir.), writs denied, 599 So.2d 316, 317 (La.1992).
[3] Writs have been granted by the Louisiana Supreme Court in Rick on application of both parties.
[4] The trial court did rule "It is, therefore, the specific finding of the Court that the Department's failure to repair the known defective bridge railing was a substantial factor in bring about the resulting harm to the plaintiffs." (Emphasis added.)
[5] In Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (La.1970), there were two causative factors (the defendant leaving his auto unattended blocking a heavily traveled highway and the dump-truck driver who rear-ended the pickup truck in between in which the plaintiff's husband was a passenger.) We cannot say the negligence of each would have produced the "identical result," but the but-for analysis shows that without the cause of either the accident (event) would have not occurred.
[6] Professor Wex Malone says, "The [but-for] test was discredited ... for philosophical usage by David Hume, its originator. The indispensable antecedent test was rejected for philosophical purposes because of the impossibility of establishing to philosophical certainty what would have occurred in the absence of the asserted cause antecedent." For legal considerations, we do not have to be certain that the occupants of the truck would have been killed in the absence of DOTD's negligence. The law deals in probabilities and based on Professor McPhate's training, experience, and education, the death of the three occupants of the vehicle was a probable result. Ruminations on Cause-In-Fact, 9 Stan. L.Rev. 60, 67 and n. 9 (1956).