545 So.2d 994 (1989)
David DILL and Anna Dill
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 88-C-0850.
Supreme Court of Louisiana.
June 19, 1989.
*995 Norman L. Sisson, Sharon F. Lyles, William J. Doran, Jr., Frank J. Gremillion, Baton Rouge, for applicant.
Robert Chaisson, Destrehan, for respondent.
LEMMON, Justice.
The principal issue in this case is whether the Department of Transportation and Development (DOTD) was the sole party at fault in the two-car collision on a state highway.
The mid-day collision occurred in 1985 in a curve of La. Highway 48 (River Road) in St. Charles Parish known as Brown's Curve. Rain had been falling, and the asphalt pavement was wet.
Plaintiffs, Mr. and Mrs. David Dill, were traveling east on the highway with Mr. Dill driving, and Warren Savoie was traveling west. As Savoie was negotiating the curve, he lost control of his car, crossed the center line, and collided head-on with the Dill vehicle.
The Dills compromised their claim with Savoie and filed this action against DOTD, alleging that DOTD was solely at fault in causing the accident. DOTD denied any liability, but alternatively alleged in its answer that Savoie was at least concurrently at fault and that the Dills' recovery should be reduced proportionately to the amount of fault attributable to Savoie.
After a trial on the merits, the district court rendered judgment in favor of the Dills and against DOTD for the full amount of the Dills' damages. The judge found that Dill was driving in his own lane at an appropriate speed and was suddenly faced with another motorist in his lane, without any reasonable opportunity to take evasive action. The judge further found that Savoie was driving at about the posted advisory safe speed for the curve (thirty miles per hour) and that the curvature of the road caused his car to go into the opposite lane. The judge concluded that the defective condition of the highway resulting from DOTD's failure to properly maintain the road was the sole causative fault in the accident.
The court of appeal affirmed in a divided decision. 522 So.2d 1288. The intermediate court reasoned that DOTD was at fault because the roadway was substandard in curvature and superelevation (banking), and was "worn, pot marked and cracked", especially in Savoie's lane. The court noted the history of a large number of accidents in the curve, the numerous complaints to DOTD by parish officials, and the recommendations of DOTD's traffic operations engineer for realignment of the curve because the posted warnings failed to adequately alert drivers to expect fully the significantly dangerous condition of the curve. The court held that the expert testimony, which explained that sliding could occur in the curve at the posted speed limit because of the substandard roadway conditions combined with the surface wetness, supported a finding of Savoie's lack of causative fault. We granted DOTD's application for certiorari. 532 So.2d 753.
DOTD contends that this court's decision in Meyers v. Department of Transportation and Development, 493 So.2d 1170 (La. 1986), requires reversal of the lower courts. This court held in Meyers that DOTD's failure to bring an existing highway up to the standards adopted after construction of the highway was not in itself grounds for imposition for liability on DOTD.[1] The *996 Meyers decision, however, is not controlling here. Meyers does not stand for the proposition advanced by DOTD that it can escape liability simply by showing that a highway met the existing standards when it was built. The present case turns on the determination of the question whether the condition of the highway constituted an unreasonable risk of injury which caused the accident. Design standards both at the time of original construction and at the time of the accident may be relevant factors for consideration in deciding this issue, but are not determinative of the issue.
The posted speed limit along the River Road in the general area was thirty-five miles per hour. A westbound motorist (such as Savoie) approaching the curve was warned by a yellow sign with a black arrow indicating a curve to the right. Attacted to the curve sign was a smaller advisory sign indicating that the safe speed for the curve was thirty miles per hour. There were also six chevron signs warning motorists of the approaching curve and flashing yellow lights warning motorists of a danger ahead.
The evidence also established that there had been seventy-two accidents in the curve in the six and one-half years prior to the accident, including fourteen in 1983 and twenty-three in 1984 (the latter an average of almost two per month). There were also records of numerous complaints from citizens of the community about the dangerousness of the curve and numerous requests from the parish governing authority that DOTD take immediate steps to make the highway safer at that point.
Savoie testified that he traveled the curve approximately two times per week and was aware of some of the dangers. He stated that he was attentive to the road ahead, saw the flashing lights, slowed as he approached the curve, and applied his brakes lightly as he entered the curve. When the car began to slide on the wet pavement, he let up on the brakes and attempted to regain control, but slammed the brakes when he saw the Dill car upon him. He further asserted that there were numerous potholes in his lane in the curve.
Plaintiffs presented an expert in traffic engineering and accident reconstruction who opined that the dangerous condition of the highway was the cause of the accident. He asserted that the highway was too narrow (a ten-foot lane width rather than the twelve-foot width currently required by modern standards); that the degree of the curvature was too severe (almost thirteen degrees, as compared to the recommended maximum curvature of four to six degrees); that there was virtually no shoulder on the highway; that the superelevation measurements of the curve varied, indicating the sloping was not uniform and that the coefficient of friction and critical speed determination were thereby affected; and that the pavement in the curve contained shallow potholes and cracked and worn surfacing, particularly in the right wheel path of the westbound lane.
On cross-examination the expert defined safe curve speed as the speed at which most drivers could negotiate the curve without problems under most conditions.[2] *997 Critical curve speed was defined as the speed at which a vehicle will begin to slide on the pavement under the worst conditions. The expert calculated the critical speed of Brown's Curve at forty-one miles per hour, assuming a uniform surface. He admitted that the facts of the case may indicate driver error on Savoie's part.
The district engineer for DOTD testified that there was a history of problems with driver expectation in the curve despite the seemingly adequate warning signs. More than three years before this accident, the engineer recommended realignment of the curve as the long-term solution and installation of chevron signs and flashing beacons as an interim measure.
DOTD also presented an expert in highway safety and accident reconstruction. He calculated that the coefficient of friction was sufficient to hold a car on the road in the curve at thirty miles per hour with virtually no banking. He opined that the surface deficiencies (which he characterized as an early stage of deterioration of the pavement) in the westbound lane of the curve were not sufficient to cause any significant decline in friction, noting that when one wheel encounters a cracked surface or bounces there are still three other wheels in contact with the pavement. Calculating the critical curve speed at forty-five miles per hour, he opined that the primary cause of the accident was driver error, because there was no other reason for a driver to loose control at thirty miles per hour.
We conclude that the condition of the curve presented an unreasonable risk of harm. The narrow lane width and the severe degree of curvature were long standing design conditions, the danger of which DOTD arguably might protect against by use of adequate warning devices. However, the danger from this combination of design deficiencies was compounded by construction and maintenance defects which included variations in banking and deterioration of the westbound lane of the roadway.[3] The trial court's decision that the condition of this curve constituted an unreasonable risk of harm which contributed to causing this accident was therefore supported by the record.
As to Savoie's fault, the trial court was clearly wrong in deciding on this record that Savoie's conduct did not constitute causitive fault in the accident. Both experts calculated the critical curve speed at forty-one miles per hour or more, and both testified that driver error was or might have been at least a concurrent cause of the accident. On this undisputed evidence one must conclude that Savoie's sliding was caused by speed in the curve considerably above the safe curve speed posted on the warning sign (which Savoie admitted he saw) or by some other substandard driving on his part. We therefore conclude that the concurring fault of DOTD and Savoie was the legal cause of this accident.
Considering the factors outlined in Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985), we fix DOTD's fault at one-half and Savoie's fault at one-half. Inasmuch as plaintiff's settlement with Savoie and release of the joint tortfeasor deprived DOTD of its right to demand contribution from Savoie proportionate to his degree of fault, plaintiffs' judgment against DOTD must be reduced by one-half. Harvey v. Travelers Insurance Co., 163 So.2d 915 (La.App. 3rd Cir. 1964).
Accordingly, the judgments of the lower courts are amended to reduce the awards by one-half. As amended, the judgments are affirmed.
WATSON and MARCUS JJ., dissent and assigns reasons.
*998 COLE, J., respectfully dissents under MYERS and MANASCO, there is no actionable fault on the part of D.O.T.D.
WATSON, Justice, dissenting.
Experts testified that driver error "might have been at least a concurrent cause of the accident." This tenuous testimony did not convince the trial court, which made a factual determination that driver Savoie was not at fault. The court of appeal affirmed because the judgment is supported by other evidence and is not clearly wrong. This court should not have granted a writ in a purely factual case containing no egregious injustice.
I respectfully dissent.
MARCUS, Justice (dissenting).
I disagree with the majority's conclusion that the condition of Brown's Curve presented an unreasonable risk of harm. The failure of DOTD to reconstruct the state's highways to meet modern standards does not establish the existence of a harzardous defect. Manasco v. Poplus, 530 So.2d 548 (La.1988); Myers v. State Farm Mutual Automobile Insurance Co., 493 So.2d 1170 (La.1986). DOTD's duty is to keep Brown's Curve in a reasonably safe condition. Plaintiff has presented no evidence that DOTD breached this duty. The curve was adequately marked by signs and flashing lights. The posted speed limit was well below the critical curve speed as determined by expert testimony. Although there were some minor surface deficiencies in the pavement, these were not a cause of the accident. Clearly, the sole cause of the accident was driver error on the part of plaintiff. Accordingly, I respectfully dissent.
NOTES
[1] In Meyers the motorist was run off a rural highway by another car and struck a large tree located nine feet from the edge of the pavement. Plaintiff, a passenger, was injured in the collision.

When the road was originally constructed prior to 1927, the crown of the roadway had steep roadside ditches and was lined with trees, culverts, fences and other objects. In three subsequent construction projects the lanes were paved and eventually widened and resurfaced. In a 1977 construction project each lane was widened by two feet to meet the current standard which required that this class of roadway be twenty-four feet wide. However, the extension of the paved surface created a technical violation of another standard which required that the horizontal clearance between the roadway and roadside objects be no less after completion of construction than it was before the construction. This court held that the stretch of road did not present an unreasonable risk of harm, noting that DOTD's failure to reconstruct the state's highways to modern standards does not in itself establish the existence of a hazardous defect. Moreover, it was evident that DOTD's conduct in extending the paved surface two feet closer to the tree was not a cause-in-fact of the accident. The accident obviously would still have occurred in the same manner if the edge of the pavement had been two feet further from the tree.
[2] Experts for both sides testified that ball-bank tests indicated the safe curve speed was thirty miles per hour, the speed indicated on the advisory sign.
[3] There is a clear difference between a design defect in a single curve and one in an entire stretch of road. Perhaps DOTD may discharge its duty to the motoring public by providing warnings that an entire strip of highway contains, for example, a narrow lane width. It is much more difficult to conclude that DOTD has fulfilled its duty to the motoring public when it permits a combination of dangerous conditions, consisting of both design and maintenance defects, to exist at one point in a highway, without taking any remedial steps other than installation of warning signs.