620 So.2d 1149 (1993)
Debra M. HUNTER
v.
The DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT OF the STATE OF LOUISIANA, State Farm Mutual Insurance Company, Conny D. Rush and Old Hickory Casualty Insurance Company.
No. 93-C-0235.
Supreme Court of Louisiana.
July 1, 1993.
*1150 John P. Aydell, Jr., Jack M. Dampf, Broussard & Dampf, William F. Janney, Lane, Fertitta, Lane & Tullos, Sam J. D'Amico, D'Amico & Curet, Baton Rouge, for applicant.
Lon D. Norris, Rea & Norris, Baton Rouge, Richard P. Ieyoub, Atty. Gen., for respondent.
MARCUS, Justice.[*]
Debra M. Hunter filed this wrongful death suit against the Department of Transportation and Development of the State of Louisiana (DOTD), and Conny D. Rush to recover damages resulting from the death of her husband, Norman Hunter, in an automobile accident on U.S. Highway 190 (Highway 190).[1]
On November 22, 1989, at approximately 3:55 p.m. on a rainy afternoon, Norman Hunter was proceeding westbound in a pickup truck on Highway 190, a four lane highway. Hunter moved into the left hand lane, intending to make a left turn on to Young Avenue. Behind Hunter in the left hand lane was the vehicle of an unknown driver, and following that vehicle was a truck driven by Conny D. Rush. Once Hunter signaled to make the turn, the unknown vehicle immediately behind him switched into the right lane. By this time, Hunter had come to a stop in order to make the turn. Rush, who was traveling at approximately sixty miles per hour, attempted to move into the right hand lane, but was blocked by a vehicle driven by Steven Comeaux. Comeaux moved toward the right shoulder in an attempt to allow Rush into the right lane; however, Rush was unable to do so and rear ended Hunter's vehicle. After being rear ended, the Hunter vehicle was propelled forward, and the front of his vehicle struck a guardrail at the west end of the median opening, then struck an east bound vehicle driven by Joyce Schoen, causing Hunter's vehicle to flip on its side. Hunter was partially ejected through the passenger side window and was pinned between his vehicle and the ground. He died shortly after the accident.
After trial on the merits, the trial judge rendered judgment in favor Debra M. Hunter against DOTD in the sum of $264,675.10 together with legal interest, and against Conny D. Rush in the sum of $239,675.10[2] together with legal interest. The court apportioned fault in the amount of fifty per cent each to both Rush and DOTD. DOTD appealed. No answers to the appeal or cross appeals were taken by the other remaining parties in the lawsuit, Debra M. Hunter and Conny D. Rush. The court of appeal reversed the judgment of the trial court holding DOTD liable.[3] Upon joint application by Debra M. Hunter and Conny D. Rush, we granted certiorari to review the correctness of that decision.[4]
The sole issue presented for our consideration is whether DOTD is liable to plaintiff.
DOTD's liability to plaintiff may arise under a theory of negligence, La.Civ. Code art. 2315, or a theory of strict liability, La.Civ.Code art. 2317. Under both articles, liability hinges on whether the defendant has breached his duty to the plaintiff. Briggs v. Hartford Ins. Co., 532 So.2d 1154 (La.1988). While the basis for determining *1151 the existence of the duty is different in art. 2317 strict liability cases and in ordinary negligence cases, the duty that arises is the same. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982). DOTD's duty to travelers is to keep the state's highways in a reasonably safe condition. LeBlanc v. State, 419 So.2d 853 (La.1982); Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). Whether DOTD breached its duty, that is, whether the roadway at the scene of the accident was in an unreasonably dangerous condition, will depend on the facts and circumstances of each case. Manasco v. Poplus, 530 So.2d 548 (La.1988); Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170 (La.1986). Design standards both at the time of the original construction and at the time of the accident may be relevant factors for consideration in deciding this issue, but are not determinative. Dill v. State, Department of Transportation and Development, 545 So.2d 994 (La.1989).
Highway 190 was originally constructed in 1932 as a two lane highway. In 1951-52, it was changed to a divided four lane highway at a cost of approximately $1.1 million. The project consisted of eleven miles. Certain sections of the highway west and east of the accident site had wide grassy medians; however, a section of the project approximately five miles long (including the accident site) was divided by a narrow four foot median. Guardrails were added to this five mile section in 1965 and lowered in 1967, at a total cost of approximately $450,000. In the early fifties, Highway 190 had a speed limit of seventy miles per hour and carried 9,900 vehicles per day; today, it has a speed limit of 55 miles per hour and carries approximately eleven to twelve thousand vehicles per day. Originally, the highway was the only artery for traffic from south Louisiana traversing the Atchafalaya spillway to get to the western and northern parts of the state, although the opening of I-10 between Baton Rouge and Lafayette in 1972 absorbed some of the traffic.
At trial, plaintiff presented the testimony of Robert Canfield, an expert in traffic engineering and highway design. Mr. Canfield testified that the 1951-52 project was major construction which resulted in "an absolutely brand new roadway on a new location" that "just happened to be adjacent to a two-lane roadway that already existed." He expressed an opinion that the highway did not meet the minimum guidelines that existed at the time of construction in 1951-52, and should have provided a wider median, at least wide enough to provide a left turn lane. He noted that the standards of the American Association of State Highway Transportation Officials (ASHTO), as referred to in a 1950 edition of the Traffic Engineering Handbook, required median strips in rural areas to be a minimum of fifteen feet, with a desirable width of forty feet. He also referred to the 1949 Design Standards for Rural and Urban Highways from the Louisiana Department of Highways (Exhibit P-14), in effect at the time of the 1951-52 construction, which listed the median width for a class I highway (such as Highway 190) at a minimum of forty feet. Mr. Canfield testified there was nothing in the physical conditions of the area that would have prevented DOTD from following these median standards. In the area where the accident took place, he found DOTD had a right of way of 125 feet on the north side of the highway and 80 feet on south side, and an adequate median or turning lane could have been easily added:
There is already four foot in the median. If you were going to build say a 15 foot median or even say 20 foot, you would have added say anywhere from 11 to 12, 13 feet additional, which would have meant basically moving the shoulder out. In fact, what could be done right now is basically tear out the shoulderthere is a 10 foot shoulder out therewiden it a couple of feet, make a lane out of it, and then add a shoulder to it, and use what is now the left most lane for westbound traffic to create an 11 or 12 foot median lane for left turns. So the only thing that would have to be done is some additional embankment would have to be put there for the shoulder area and to stabilize the shoulder and the roadway itself.
*1152 Mr. Canfield concluded that in his opinion, the absolute minimum requirement would have been a fifteen foot median to accommodate a left turn lane, with a twenty foot median being more desirable. He felt a forty foot median would serve a very good purpose, since a turning slot could be placed into it, allowing people to make Uturns with a great deal more safety than they could now with the four foot median. Finally, he noted that prior accident information corroborated his opinion that there was a design defect, since it showed a large number of accidents with injuries in this particular five mile stretch.
Plaintiff also presented the testimony of Dr. Olin K. Dart, an expert in accident reconstruction and traffic design. Dr. Dart testified that if there had been a place of refuge for Hunter's turning vehicle, either in the form of a left turn lane or a median of sufficient width, the accident in all probability would have been avoided. He found that the four foot median, while perhaps appropriate in an area with no crossings, was dangerous in an area where there will be crossing maneuvers and left turns. He agreed with Mr. Canfield's opinion that the 1951-52 project was tantamount to new construction and the standards in effect at that time should have been used. He stated that the forty foot median standard set forth in P-14 was the standard in effect at the time of this project. While Dr. Dart admitted that standards were not "cast in stone," he was unable to find a compelling reason for deviating from this standard in this case.[5] On the issue of costs, Dr. Dart testified that a fifteen foot median would have probably doubled the cost of the project, whereas a forty foot median may have raised the cost by three to five times as much. However, in response to questioning by the court, Dr. Dart indicated there were less costly alternatives:
BY THE COURT:
Q: Let me ask you a question: talking about widths of these medians and we know further down the road there's a median where its a lot wider than four feet at this particular point-of-accident. Wouldn't it have been just a lot safer to go ahead and put the barrier up all the way across there and let the people go down further to the widened area to make U-turns, or make it a little bit wider at one spot rather than cost the state a lot of money to make it wide all the way from Baton Rouge to Opelousas, or however far this eleven mile strip is, five mile, whatever, it doesn't matter?
A: That's a possible alternative, Judge, that you could design a narrow median and not allow turns except where you provide wider medians.
Q: That wouldn't have cost a whole lot to do that?
A: That would have cost less than the continuous forty foot or even the continuous fifty.
Likewise, Dr. Dart stated that the danger could be made less consequential if speed limits in the area were lowered to thirtyfive or forty miles per hour.
DOTD presented the testimony of Dr. Joseph Blaschke, an expert in highway design. Dr. Blaschke initially characterized the 1951-52 project as a rehabilitation project rather than a major construction. However, after reviewing certain documents concerning the project, Dr. Blaschke admitted that the project was on the borderline between rehabilitation and major construction. As to the standards, Dr. Blaschke testified that the ASHTO standards in effect at the time of the project indicated there was a range of median widths, with four feet as a minimum and wider medians whenever possible or practical within reasonable costs. Based on this standard, Dr. Blaschke found the highway complied with the ASHTO policy. He stated this type of road was a very standard design in the 1950s and was considered a very logical design at the time. Further, he noted that widening the median *1153 would have added substantial cost to the project.
In his written reasons for judgment, the trial judge agreed with plaintiff's experts that the project constituted major construction which in effect yielded a new highway. He found that DOTD failed to follow prudent and proper design and construction standards by not providing a median of sufficient width to accommodate turning and crossing traffic in this five mile portion of the project. He observed that DOTD was on notice of this hazardous defect at the time of the project's construction, based on the Department of Highways standards in effect at the time (providing for a forty foot median for this class of highway) and on the ASHTO standards (providing for a median of sufficient width for turning and crossing traffic). While the judge agreed that these standards should not be inflexibly applied, he found, based on the testimony of all three experts, that there was "no circumstance to justify deviation from the median width standards of the Department of Highways or at worst, from not providing a median at least wide enough to accommodate turning and crossing traffic, albeit not 40 feet in width." Accordingly, the trial judge found DOTD liable under theories of both negligence and strict liability.
In reversing the judgment, the court of appeal concluded the trial judge erred in failing to follow this court's opinion in Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170 (La.1986). We find the court of appeal misapplied Myers.
In Myers, we noted that prior to 1977, all construction on the road at issue (Greenwell Springs Road) complied with the applicable standards then in effect. In 1977, the road was resurfaced and the lanes were widened by two feet. While we agreed that this action technically violated DOTD's standards (since it decreased the horizontal clearance between the roadway and roadside objects), we found that overall the highway was improved and made more safe for persons traveling on it because the lanes of travel were widened and the surface of the road was improved, but the crown of the highway was not brought any closer to roadside objects. Thus, we found that DOTD did not breach its duty to keep Greenwell Springs Road in a reasonably safe condition. Further, we noted the characteristics of Greenwell Springs Road (narrow shoulders, steep ditches, lined with trees, culverts, fences and other objects) were common to many Louisiana roads, and it would be physically impossible to bring all of the state's roads up to modern standards. Accordingly, we held that the mere failure of DOTD to reconstruct the state's highways to meet modern standards does not establish the existence of a hazardous defect.
Applying the precepts of Myers to the instant case, we find no error in the trial judge's holding. We note that the evidence clearly supports the finding that the project in the present case was a major construction project, essentially resulting in a new road, unlike the minor work involved in Myers. Given this fact, we see no reason why DOTD should not be held to the same standards as if it were constructing a new road. Of course, as we stated in Myers, DOTD should not be inflexibly held to such standards, since in many cases it may be physically or financially impossible to meet them, and the guiding inquiry should always be whether the road in question presented an unreasonable risk of harm. See Dill v. State, Department of Transportation and Development, 545 So.2d 994 (La.1989). In the present case, the expert testimony clearly established that the five mile stretch of Highway 190 with a four foot median presented an unreasonable risk of harm to left turning motorists. DOTD presented no evidence to show it was physically or financially impossible to make this section of the road safe. While there was evidence that complying with the forty foot median standard may have increased the cost of the project, the experts testified that construction of a fifteen or twenty foot median with a turning lane would have made the road safer at a lower cost. Further, Dr. Dart pointed out that DOTD could have limited turns within this five mile stretch, or reduced the speed limit, either of which would have increased the safety of the road with little cost.
*1154 After reviewing the record, we find no manifest error in the trial judge's conclusion that the five mile section of Highway 190 containing a four foot median was unreasonably dangerous to left turning motorists. We believe the record supports the conclusion that DOTD was fifty percent at fault for the accident. The court of appeal erred in reversing the judgment against DOTD. Stobart v. State of Louisiana, Through Department of Transportation, 617 So.2d 880 (La.1993); Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
On the issue of damages, we find there was no question or opposition to the trial judge's award of special damages in the amount of $304,350.21. Under the facts of this case, the trial judge's award of the sum of $225,000 in general damages for loss of love and affection does not constitute an abuse of discretion. Accordingly, the damage awards made by the trial judge are affirmed.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the district court rendering judgment in favor of plaintiff, Debra M. Hunter, and against defendant, the Department of Transportation and Development of the State of Louisiana, is reinstated. All costs of this appeal are assessed against the Department of Transportation and Development of the State of Louisiana.
NOTES
[*] Pursuant to Rule IV, Part 2, 3, Calogero, C.J. was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] Other defendants named in the petition were Old Hickory Casualty Insurance Co. (Hunter's uninsured motorist carrier), and State Farm (Rush's liability insurer). State Farm tendered its policy limits of $25,000 and was dismissed with prejudice. Summary judgment was granted in favor of Old Hickory on the ground that its policy had lapsed and plaintiff's suit against it was dismissed with prejudice.
[2] This figure was arrived at by subtracting the $25,000 previously paid by State Farm from the total award of $264,675.10.
[3] 612 So.2d 790 (La.App. 1st Cir.1992).
[4] 615 So.2d 333 (La.1993).
[5] Both Mr. Canfield and Dr. Dart speculated that one possible reason for the narrow median in this five mile stretch was to retain certain oak trees which were close to the road. These trees were apparently eliminated at a later date.