727 So.2d 507 (1998)
Anna Pesson, wife of and Raymond PESSON, Jr. and Their Minor Children, Raymond Pesson, III and Jasmine Pesson
v.
Jess REYNOLDS, III, Patterson Truck Line, Inc. and Insurance Company of North America.
No. 97 CA 0150.
Court of Appeal of Louisiana, First Circuit.
November 13, 1998.
Dissenting Opinion December 9, 1998.
Rehearing Denied February 26, 1999.
*508 Lawrence K. Burleigh, Sr. Lafayette, LA, for plaintiffs-appellees Anna Pesson, Wife of and Raymond Pesson, Jr., et al.
William F. Dodd, Houma, LA, for defendants Jess Reynolds, III, Patterson Truck Line, Inc., and Insurance Company of North America.
James L. Pate, Lafayette, LA, for defendant Insurance Company of North America.
Bryan D. Scofield, Susan A. Daigle, Lafayette, LA, for defendants Excess Underwriters and Jess Reynolds, III, and Patterson Truck Line, Inc.
Brenda S. Nation, Edward M. Campbell, Baton Rouge, LA, for defendant-appellant State of Louisiana, Department of Transportation and Development.
Jay C. Zainey, Metairie, LA, for Intervenor Louisiana Health Care Authority.
BEFORE: GONZALES, PARRO, FITZSIMMONS and GUIDRY, JJ., AND LOTTINGER,[1] J. Pro Tem.
Dissenting Opinion of Judge Guidry December 9, 1998.
GONZALES, J.
In this personal injury action, the defendant, the State of Louisiana through the Department of Transportation and Development, appeals from the trial court's finding of liability and assessment of damages.

FACTS
On July 2, 1993, at approximately 11:20 p.m., Anna Pesson (Mrs. Pesson) was driving her 1990 Ford Probe eastbound on U.S. Highway 90 (Hwy.90) in Morgan City, Louisiana, en route to her home in Bayou L'Ourse. Mrs. Pesson was traveling alone and had just attended a birthday party for her husband's uncle in Bayou Pigeon. Upon approaching the intersection of Hwy. 90 and Aycock Street, Mrs. Pesson collided with the *509 rear portion of an unloaded lowboy trailer, which was attached to a tractor driven by Jess Reynolds, III (Mr. Reynolds). Mr. Reynolds was in the course and scope of his employment with Patterson Truck Line, Inc. and was headed to Ville Platte, Louisiana, to pick up a forklift. At the time of the collision, Mr. Reynolds was making a left turn from Aycock Street into the westbound lane of Hwy. 90.
Following the accident, Mrs. Pesson was taken to Lakewood Hospital in Morgan City, Louisiana, and then transferred to Charity Hospital in New Orleans for treatment. As a result of the accident, Mrs. Pesson suffered severe injuries.

PROCEDURAL HISTORY
On August 6, 1993, Mrs. Pesson, her husband, Raymond Pesson, Jr. (Mr. Pesson), and their minor children, Raymond Pesson, III and Jasmine Pesson (collectively referred to as "plaintiffs"), filed a petition for damages, naming as defendants Mr. Reynolds; his employer, Patterson Truck Line, Inc.; and its insurer, Insurance Company of North America (collectively referred to as "defendants"). In their petition, plaintiffs alleged that the sole and proximate cause of the accident was the negligence of Mr. Reynolds. On September 10, 1993, defendants filed an answer, generally denying plaintiffs' allegations. The defendants also asserted the comparative fault of Mrs. Pesson.
On November 2, 1994, Excess Underwriters[2] intervened in the lawsuit, alleging that it issued a policy of excess insurance to Patterson Truck Line, Inc. and, because of the magnitude of the claimed damages, it wished to intervene in the lawsuit to oppose plaintiffs' claims. In addition, Excess Underwriters filed a third party demand, naming as a third party defendant, the State of Louisiana, through the Department of Transportation and Development (DOTD). The third party demand alleged DOTD was negligent and strictly liable for plaintiffs' injuries because the intersection of Hwy. 90 and Aycock Street was unreasonably dangerous. Excess Underwriters also alleged that if Excess Underwriters had to pay damages, then it was entitled to indemnification and/or contribution from DOTD. Defendants then filed a supplemental and amending answer to the petition, also affirmatively alleging the fault of DOTD. On November 16, 1994, plaintiffs filed a supplemental and amending petition, naming Excess Underwriters as an additional defendant. Excess Underwriters filed an answer, generally denying plaintiffs' allegations and alleging the comparative fault of Mrs. Pesson.
Mr. and Mrs. Pesson, individually and on behalf of their minor children, entered into a settlement agreement with CIGNA/Insurance Company of North America, Mr. Reynolds, and Patterson Truck Line, Inc. This settlement consisted of $1,500,000 (the limits of the insurance policy) paid to the Pessons by CIGNA/Insurance Company of North America, and $500,000 (the deductible) paid to the Pessons by RPC Energy Services, Inc., on behalf of Mr. Reynolds and Patterson Truck Line, Inc. Pursuant to the settlement agreement, CIGNA/Insurance Company of North America was dismissed from the lawsuit with prejudice, on December 21, 1994. Mr. Reynolds and Patterson Truck Line, Inc., remained as defendants in the lawsuit for any amounts in excess of $2,000,000.
On January 10, 1995, the Louisiana Health Care Authority intervened in the suit on behalf of Charity Hospital in New Orleans, alleging that it had a right to intervene for recovery of charges for services rendered there to Mrs. Pesson. Plaintiffs and defendants filed answers to the intervention of the Louisiana Health Care Authority, generally denying its allegations.
On January 13, 1995, DOTD filed an answer to the third party demand of Excess Underwriters, generally denying the allegations. *510 On May 22, 1995, plaintiffs filed a supplemental petition, naming DOTD as an additional defendant, and alleging the intersection of Aycock Street and Hwy. 90 was unreasonably dangerous and DOTD was strictly liable for the plaintiffs' damages. DOTD filed an answer to the supplemental petition, alleging the comparative fault of Mrs. Pesson and the other defendants named in the suit.
Trial was held on April 3-4, 1996, and June 5-6, 1996. Before the trial, Patterson Truck Line, Inc. and Excess Underwriters entered into a "Mary Carter" settlement agreement with the plaintiffs.[3] Pursuant to the agreement, Excess Underwriters gained a financial interest in Mrs. Pesson's recovery and was realigned as a plaintiff, leaving DOTD as the only defendant. Following the trial, a judgment was rendered in favor of the plaintiffs and the third party plaintiff, awarding $4,925,027.14 in damages, plus interest and costs. The trial court assessed Mr. Reynolds and Patterson Truck Line, Inc. with 60% of the fault and DOTD with 40% of the fault. Damages were allocated as follows:

Special Damages For Anna Pesson
1) Past Lost wages $ 27,090.00
2) Future loss of wages $ 200,992.00
3) Past medical expenses $ 206,945.14
4) Future orthopedic surgeries $ 40,000.00
5) Life Care $1,500,000.00
General Damages
1) Loss of ConsortiumRay Pesson, Jr. $ 250,000.00
2) Loss of ConsortiumRay Pesson, III $ 100,000.00
3) Loss of ConsortiumJasmine Pesson $ 100,000.00
4) Past and Future pain and sufferingAnna Pesson $2,500,000.00

It is from this judgment that DOTD now appeals and urges the following assignments of error:
1. The trial court erred in finding DOTD liable under theories of strict liability and negligence.
2. The trial court erred in its allocation of fault between the parties by apportioning forty percent of fault to DOTD and only sixty percent to Jess Reynolds and not apportioning any fault to Anna Pesson.
3. The trial court erred in its assessment of $2,500,000 in general damages to Anna Pesson.
4. The trial court erred in its assessment of $250,000 in loss of consortium damages to Raymond Pesson, Jr. and $100,000 each for loss of consortium damages to Raymond Pesson, III and Jasmine Pesson.

THE LIABILITY OF DOTD
In assignment of error number one, DOTD contends the trial court erred in finding DOTD liable under theories of strict liability and negligence.
The elements which plaintiff must prove to recover damages from a public entity based on a defective condition of a roadway are the same, whether based on negligence or strict liability. Faulkner v. State, Department of Transportation and Development, 25,857, 25,858 (La.App.2nd Cir. 10/26/94), 645 So.2d 268, 273, writs denied, 94-2901, 94-2908 (La.1/27/95), 649 So.2d 390. A plaintiff must prove: (1) that the defendant owned or had custody of the thing which caused the damage; (2) that the thing was defective in that it created an unreasonable risk of harm to others; (3) that the *511 defendant had actual or constructive knowledge of the defect or risk of harm and failed to take corrective action within a reasonable time; and (4) causation. Faulkner v. State, Department of Transportation and Development, 645 So.2d at 273.[4]
DOTD has a legal duty to the traveling public to maintain the highways in a reasonably safe condition for non-negligent motorists. Liability based upon negligence is imposed when DOTD is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time. Sinitiere v. Lavergne, 391 So.2d 821, 824-825 (La.1980). DOTD's duty extends not only to prudent and attentive drivers, but also to motorists who are slightly exceeding the speed limit or are momentarily inattentive. Trahan v. State, Department of Transportation and Development, 536 So.2d 1269, 1273 (La.App. 3rd Cir.1988), writ denied, 541 So.2d 854 (La.1989).
Whether the roadway at the scene of the accident was in an unreasonably dangerous condition will depend on the facts and circumstances of each case. Hunter v. Department of Transportation and Development, 620 So.2d 1149, 1151 (La.1993). Design standards, both at the time of original construction and at the time of the accident, may be relevant factors in determining whether a given stretch of roadway presents an unreasonable risk of harm, but are not determinative of the issue. Dill v. State, Department of Transportation and Development, 545 So.2d 994, 996 (La.1989).
The standard of review is manifest error in cases where unreasonable risk of harm is at issue. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362, 364. The trial court's factual findings are reversible only when there is no reasonable basis for the conclusions, or they are clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
The trial court relied upon the intersection's failure to meet certain AASHTO policy guidelines for intersectional sight distance to find that the intersection was unreasonably dangerous.[5] However, no court in Louisiana has found that the AASHTO policy guidelines for intersectional sight distance must be met at every intersection in the state. And further, we note, these are guidelines, not regulations. Rogers v. Roch, 95-242 (La.App. 5th Cir. 10/18/95), 663 So.2d 811, 815 n. 3, writ denied, 95-2769 (La.1/26/96), 666 So.2d 678. The intersectional sight distance for Mr. Reynolds to the left was 580 feet, according to plaintiffs' expert, Dr. Olin Dart. There is no evidence in the record to show that, bad Mr. Reynolds bad an additional 200 to 300 feet of intersectional sight distance, he would not have made the turn when he did. Accordingly, we find the trial court committed manifest error in finding that the failure of the intersection to meet the AASHTO policy guidelines for intersectional sight distance created an unreasonable risk of harm.
We note the recent case of Aucoin v. State, through Department of Transportation and Development, 97-1938, 97-1967 (La.4/24/98), 712 So.2d 62. In Aucoin, there were three deviations from AASHTO guidelines in the off-roadway area: a "drop off" shoulder, a nonrecoverable slope, and limited horizontal clearance. The Aucoin court noted that:
While failure to adhere to AASHTO standards may not in itself attach liability, whether DOTD has conformed to those standards is a relevant factor in determining the ultimate issue of whether the roadway is unreasonably dangerous. Dill v. DOTD, 545 So.2d 994 (La.1989).
In the Aucoin case, it was the combination of the three deviations from the AASHTO policy guidelines, along with a history of accidents on Greenwell Springs Road, that rendered the off-roadway area unreasonably dangerous to the public, as noted by the Louisiana Supreme Court. Still, in Aucoin, with an unreasonably dangerous off-roadway *512 area, DOTD was assessed with only 15% fault for the accident.
In this case, after finding DOTD's failure to meet AASHTO policy guidelines for intersectional sight distance made the intersection unreasonably dangerous, the trial court relied upon the testimony of one witness, Gary Domino (who was involved in litigation against the State), to find evidence of notice of the defect. Mr. Domino testified on cross-examination that he was trying to keep his property and that the State was not giving him enough money for the property, which it was expropriating from him. Mr. Domino testified he had seen a lot of accidents at the intersection in the forty years that he lived on that highway.
Mr. Domino also testified he had made complaints about the intersection to various local and state elected officials and to DOTD officials; however, he could not produce copies of any such correspondence. The plaintiffs failed to introduce any evidence at trial to corroborate these assertions of this witness, who was obviously biased against the State. The DOTD employees who testified at trial had no record of any complaints from Mr. Domino, any other citizen, or any elected official, regarding this intersection. No records from DOTD were introduced by plaintiffs to show how many accidents had occurred at this intersection, if any.
Given our conclusion that the trial court committed manifest error in finding the intersection unreasonably dangerous, a fortiori, we conclude that the trial court committed manifest error in finding the plaintiffs proved notice of an unreasonably unsafe condition of the roadway.

THE ALLOCATION OF FAULT
We note that due to the settlement agreements which were made in this case, our ruling on the liability of DOTD may be dispositive of this case. However, in an effort to be thorough, and to the extent that it may be necessary, we address the remaining allocation of fault.
A left turn is one of the most dangerous maneuvers a motorist may execute and requires the exercise of great caution. Thomas v. Petrolane Gas Service, Limited Partnership, 588 So.2d 711, 717 (La. App. 2nd Cir.1991), writ denied, 590 So.2d 1201 (La.1992). Before attempting a left turn, a motorist should ascertain whether it can be completed safely. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305, 1312; Thomas, 588 So.2d at 717.
Mr. Reynolds testified he took the Aycock Street route because it was several minutes faster than the designated truck route, and he believed traffic would be light at that time of the night. He stated he would not have attempted a left turn through this intersection at peak traffic times.
Mr. Reynolds testified he stopped at the stop sign and looked both ways onto Hwy. 90 and it was black both ways, with no approaching headlights. However, two witnesses driving westbound testified they saw the truck turn into the intersection. If the two westbound oncoming cars could see Mr. Reynolds' tractor-trailer pulling out, he should have seen their headlights before he pulled out from the stop sign.
Kenneth Moore, one of the witnesses to the accident, testified be was traveling west-bound on Hwy. 90 and saw Mr. Reynolds' tractor stopped at the stop sign on Aycock Street. When Mr. Reynolds entered the intersection and turned into the inside westbound lane, Mr. Moore had to apply his brakes and move to the right side to avoid hitting Mr. Reynolds' vehicle.
Becky Todd, who also witnessed the accident, testified she was traveling westbound on Hwy. 90 when she saw Mr. Reynolds turning into the westbound lane of Hwy. 90. Ms. Todd acknowledged she saw yellow reflectors all the way down the side of the trailer. Photographs of the trailer in the record show reflector lights down the side of the trailer.
Lieutenant Rick Harris, with the Morgan City Police Department, investigated the accident. He testified there were no skid marks from the Pesson vehicle, indicating that Mrs. Pesson never applied her brakes prior to the accident. In the accident report Lt. Harris indicated that Mrs. Pesson was speeding at the time of the accident, and that *513 the speed of her vehicle was a factor contributing to the accident. Lt. Harris interviewed both Ms. Todd and Mr. Moore after the accident, at which time they indicated to him that Mrs. Pesson was traveling at a high rate of speed. The force of the impact of Mrs. Pesson's car caused the trailer to become detached from the tractor.
A motorist has a duty to maintain a careful lookout, observe any obstructions present, and exercise care to avoid them. Ly v. State Through Department of Public Safety and Corrections, 633 So.2d 197, 201 (La. App. 1st Cir.1993), writ denied, 93-3134 (La.2/25/94), 634 So.2d 835; McIntyre v. Saunders, 554 So.2d 1371, 1373 (La.App. 1st Cir.1989), writ denied, 558 So.2d 583 (La. 1990); Prest v. State Department of Transportation, 490 So.2d 659, 662 (La.App. 2nd Cir.), writ denied, 494 So.2d 328 (La.1986).
The record shows that Mrs. Pesson's blood alcohol was .05 when her blood was drawn one to two hours after the accident. Expert testimony by Dr. James Freeman, who specializes in anatomic pathology, established that at the time of the accident, Mrs. Pesson's blood alcohol level would have been between .07 and .09. there is evidence in the record that, before leaving the party that night, Mrs. Pesson had at least one alcoholic beverage know as a "Flaming Dr. Pepper," which consists of a half of a beer and a shot of peppermint schnapps.
Dr. Freeman testified that alcohol causes the loss of three-dimensional perception, and slows down nerve impulses and fine muscle movements. As the quantity of alcohol increases, the reaction and reflex time decreases. He stated that an individual who drives with an alcohol blood level above .05 can be impaired enough to cause an unsafe situation.
We find that the trial court's failure to assess fault against Mrs. Pesson for the accident constituted manifest error. Mrs. Pesson failed to take any evasive action to avoid the tractor-trailer. Had Mrs. Pesson braked and slowed her car down, or simply moved into the outside lane, she could have avoided the accident entirely.
Under the facts of this case, we find Mr. Reynolds 60% at fault and Mrs. Pesson 40% at fault for the accident.[6]
Therefore, for the foregoing reasons, the trial court judgment is REVERSED. Fault for the accident is assessed 60% against Mr. Reynolds and 40% against Mrs. Pesson. Costs are assessed against Mrs. Pesson.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, J., dissenting.
The Louisiana Supreme Court in the case of Aucoin v. State, Through Department of Transportation and Development, 97-1938, 97-1967, p. 4 (La.4/24/98), 712 So.2d 62, 65, made it clear that we must look at the specific facts of the case before us to determine whether the trial court erred in finding the roadway in question unreasonably dangerous.
The majority points out that Aucoin involved a combination of deviations from AASHTO policy guidelines, along with a number of accidents at the intersection in question that rendered the intersection unreasonably dangerous. The majority, then attempts to distinguish Aucoin from the case sub judice because the trial court here found only one deviation from AASHTO. The Supreme Court's holding in Aucoin does not require that there be multiple AASHTO deviations in order to have an unreasonably dangerous condition. It depends on the facts of the particular case. Under the particular facts of this case, DOTD's failure to adhere to AASHTO sight distance standards or to take reasonable measures to ensure the intersection's safety was properly considered by the trial court in reaching its conclusion that the intersection was unreasonably dangerous. While failure to adhere to AASHTO standards may not itself attach liability, whether DOTD has conformed to those standards is a relevant factor in determining the ultimate issue of whether the roadway is unreasonably dangerous. Dill v. State, DOTD, 545 So.2d 994 (La.1989).
*514 The trial court, in looking at the specific facts of this case, determined that the Greenwood overpass project was major reconstruction and DOTD was required, during said reconstruction, to implement AASHTO intersectional sight distance or take other reasonable measures to ensure the intersection's safety, such as lowering the speed limit on that portion of the highway, putting up a "No Left Turn" sign on Aycock Street, or denying access to Highway 90 from Aycock Street altogether. The court additionally relied on the testimony of Mr. Domino, who testified that he had seen numerous accidents at this intersection over the years and that he had notified DOTD several times regarding the problems with the intersection. The trial court's decision to credit Mr. Domino's testimony must be given great deference by the appellate court. See, Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
The Louisiana Supreme Court in Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362 has held that the determination that a thing poses an unreasonably dangerous risk of harm or has an unreasonably dangerous condition is a factual determination subject to the manifest error standard of review. An appellate court may not reverse merely because it would have chosen an alternative view of the evidence. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La. 1993); Lirette v. State Farm Insurance Company, 563 So.2d 850 (La.1990); Rosell v. ESCO, 549 So.2d 840 (La.1989).
Under the specific facts of this case, the factual determination by the trial court that the intersection in question was unreasonably dangerous was fully supported by the record. The conclusions of the trial court were not manifestly erroneous or clearly wrong.
The trier of fact is owed great deference in its allocation of fault and may not be reversed unless clearly wrong. See Clement v. Frey, 95-1119, 95-1163, p. 7 (La.01/16/96), 666 So.2d 607, 610-11. Like the assessment of damages, fault allocation is a factual determination of the trier of fact which, unlike the appellate court, has the benefit of viewing first hand the witnesses and evidence. Clement v. Frey, 666 So.2d at 610-11. An appellate court may reallocate fault only after it has found a "clearly wrong" apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion. Clement v. Frey, 666 So.2d at 611.
Based upon the evidence, the trial court allocated 60% of the fault to Mr. Reynolds, 40% of the fault to DOTD and no fault to Mrs. Pesson. The trial court stated that the "testimony varies with respect to [Mrs. Pesson's] speed," but the experts [Dr. Dart and Mr. Wyble] agreed that speed played no part in the accident. The trial court further stated that "because of the limitations of low beam headlights, visual distractions, and the few second reaction time, the accident would have occurred at any speed." The trial court concluded that "the evidence established that [Mrs. Pesson] never saw the low-boy trailer extending into her lane." The trial court also concluded that the "testimony at trial indicated that [Mrs. Pesson] had one drink at the party she had just left, but there is no credible evidence that [Mrs. Peesson] was alcohol impaired," and therefore, her conduct played no part in the accident. A careful review of the record reveals no manifest or clear error in the trial court's assessment of fault in this case.
For the foregoing reasons, I respectfully dissent from the majority's opinion in this matter.
NOTES
[1] Judge Morris A. Lottinger, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Excess Underwriters consisted of the following: Certain Underwriters at Lloyd's London, Commercial Union Assurance Company PLC, The Tokio Marine and Fire Ins. Co. (UK) Limited, The Yorkshire Insurance Company Limited, The Northern Assurance Company Limited No. 6 A/C, Ocean Marine Insurance Company Limited, Terra Nova Insurance Company Limited, Zurich RE (UK) Limited, Compagnie D'Assurances Maritimes Aeriennes Et Terrestres, Indemnity Marine Assurance Company Limited and Americas Insurance Company.
[3] Counsel for plaintiffs stipulated "Your Honor, we agree that the Pesson plaintiffs and the Patterson Truck Line [Defendants] and Underwriters have reached a settlement agreement It's a Mary Carter type agreement and the parties are realigned." The amount of this settlement agreement is not in the record. Excess Underwriters guaranteed to pay plaintiffs a minimum payment, which might be partially or completely offset by recovery from DOTD.
[4] The constitutionality of La.R.S. 9:2800, as it existed at the time of the accident, has not been raised by any party.
[5] AASHTO is an acronym for the American Association of State Highway and Transportation Officials.
[6] Because of our determination that DOM is not at fault for the accident, we need not address DOTD's assignments of error numbers three and four.