JjDUFRESNE, Judge.
This is an appeal by the Louisiana Department of Transportation and Development from a judgment holding it 10% at fault for an automobile accident which resulted in damages of over five million dollars to Rena Niven, plaintiff. Plaintiff for her part has cross-appealed urging that the DOTD should be cast for a greater percentage of fault. For the following reasons we reverse the judgment against DOTD and dismiss the suit.
The basic facts of the accident are not in serious dispute. On February 2, 1988, plaintiff was a passenger in a car driven by *415 Kelly Gomez. As Gomez came over the top of an overpass he rear ended a vehicle which was stopped in traffic. The accident occurred in the left lane of the west bound 1 — 10 overpass at Veterans Boulevard after dark. Because the bumpers of the two cars were locked up, the drivers were unable to move them from the site of the collision. While waiting for the police to arrive, the plaintiff was standing near the left taillight of the Gomez car. At least five minutes after the collision, a third vehicle collided with the rear of the [ gGomez car pushing it and the first car forward, and then a fourth car ran into the rear of the third. Plaintiff said that as the fourth car came to a stop the side of it hit her about in the rib cage and threw her over the rail. She managed to grab onto the rail briefly, but then fell some twenty feet to the ground. The fall severed her spinal cord in the thoracic area and she is now a paraplegic.
Suit was originally instituted against numerous drivers and their insurers and the Louisiana Department of Transportation and Development. All defendants except DOTD settled with plaintiff and a judge trial was held as to this remaining defendant. The trial judge apportioned 70% of the fault to the various drivers, 20% to plaintiff for not removing herself from harm’s way, and 10% to DOTD for defectively designing the shoulder, curb, and rail of the overpass. Total damages were fixed at $5,290,270.27, resulting in a judgment against DOTD of $529,027.03. DOTD now appeals that judgment asserting that it should not have been found liable for any percentage of the damages. Plaintiff has cross-appealed asserting that DOTD should be cast for a higher percentage of fault. Neither party contests the amount of total damages fixed by the trial judge.
In Lee v. State Through Departent of Transportation and Development, 97-0350 (La.10/21/97), 701 So.2d 676, the court set forth the law as to DOTD’s liability for highway related accidents as follows:
In situations such as this, Louisiana law provides two theories under which DOTD may be held liable for damages: negligence, based on La. Civ.Code art. 2315, and strict liability, based on La Civ.Code art. 2317. Traditionally, these theories could be distinguished because, under strict liability, a plaintiff was relieved from proving that the owner or custodian of a thing which caused damage knew or should have known of the risks involved. La. R.S. 9:2800 13eviscerates this distinction in claims against public entities, however, by requiring proof of actual or constructive notice of the defect which causes damage. Thus, the burden of proof is now the same under either theory. The plaintiff must establish that the thing which caused the damage was in the custody of the defendant, that the thing was defective because it had a condition which created an unreasonable risk of harm, that the defendant had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and that the defect was a cause in fact of plaintiff injuries(at 677-78) (citations omitted).
La. R.S. 48:35(A), first enacted in 1968, mandates standards of road construction that DOTD must adhere to as follows:
A. The Department of Transportation and Development shall adopt minimum safety standards with respect to highway and bridge design, construction and maintenance. These standards shall correlate with and, so far as possible, conform to the system then current as approved by the American Association of State Highway and Transportation Officials. Hereafter, the state highway system shall conform to such safety standards....
Although compliance with these standards, both as they existed at the time a road was constructed and at the time of the accident, is not determinative of the issue of *416 liability, it is a relevant factor for consideration, Dill v. State, Department of Transportation and Development, 545 So.2d 994 (La.1989). DOTD has a duty to build and maintain highways in a reasonably safe condition, and whether it breached this duty depends on the circumstances of the particular case, Hunter v. Department of Transportation and Development, 620 So.2d 1149 (La.1998).
Evidence presented at trial established the following uncontroverted facts. The bridge in question here is a part of the 1-10 interstate highway system. The design work was completed by a private engineering company in 1963 and approved by DOTD shortly thereafter, and construction was completed as per those plans and specifications in March of 1967. Because of federal funding, the plans had also been submitted to |4the Federal Highway Administration and were duly approved by that agency before any federal money was released for construction. It was further shown that during that time frame DOTD used several other private engineering firms for the design of a number of other overpasses in the Jefferson Parish I — 10 corridor, and the rails, curbs, and shoulders of many of these were designed in the exact same way as those on the Veterans overpass. There was no evidence to show that the rail-curb-shoulder design used on all of these bridges constructed in the 1960’s had ever been responsible for an accident of the kind involved in this case.
Concerning the applicable standards of the American Association of State Highway and Transportation Officials (AASH-TO), it was generally agreed that the standards for roads issued in 1954, and those for bridges issued in 1961, would have been the proper references for the design of the overpass at issue here. This structure consisted of three 12 foot wide lanes, with an additional two feet of shoulder on either side, making a total roadbed width of 40 feet. On the outside edge of the left two foot shoulder there was a 10 inch high curb. From the inside edge of the curb to the base of the concrete railing was 18 inches, and the railing rose another two feet from the top of the curb.
Larry Jones was admitted as plaintiffs expert in civil and structural engineering. This expert said that he had never designed an interstate or major highway bridge, but had done extensive design work on buildings throughout the country. He testified that most building codes specify that where people are present rails must be a minimum of 42 inches. He explained that the top of a lower rail is below the center of gravity of most people and thus if they lean against such a rail they are likely to topple over 1Hit. He also cited language in the AASHTO manuals that indicated that shoulders should be wider than two feet where possible. On cross examination he admitted that the shoulder-curb-rail here met the minimal AASHTO standards of 1954 and 1961, but was of the opinion that these standards were not adequate for this bridge.
Damon Jackson was called by the state and also admitted as an expert in civil and structural engineering. He said that he had a number of years of experience in interstate and major highway construction and had occasionally participated as a nonvoting member in meetings of AASHTO and similar highway safety organizations. He testified that the shoulder-curb-railing design of the bridge met all AASHTO recommendations at the time it was designed and built and that over one-half of the interstate system’s bridges built in the 1960’s in Louisiana and other states used this design. He further noted that the most recent AASHTO manual, that of 1990, also allows bridges with two foot shoulders on each side to remain in place, and only recommends that they be considered for ultimate widening or replacement if the shoulders are not at least three feet on either side. He said that both the 10 inch high and 18 inch wide curb, and the 24 inch high rail also complied with the 1954 and 1961 standards. As to the rah itself, he noted that the present AASHTO *417 standards permit rails of only 27 inches from the road surface to the top, not the 42 inches deemed proper by plaintiffs expert. He also testified that interstate highways are designed so as to keep pedestrians off of the rights of way and that the rail height specifications are thus not those used on structures designed for foot traffic upon which plaintiffs expert relied.
As noted above, under La. R.S. 9:2800 the plaintiff here had to show | fithat DOTD knew or should have known that the shoulder-curb-rail configuration on the overpass was defective. This being a factual determination, the standard of review here is whether the trier of fact’s finding was manifestly erroneous considering the entire record of the case, Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).
The evidence relating to this issue is as follows. The design met the minimum AASHTO standards as they existed when the bridge was built. The current AASH-TO standards permit the bridge to remain in place, thus placing it in compliance with La. R.S. 48:35(A). The bridge was designed by an independent engineering firm which obviously found no defect in the design. A number of other such firms used this exact design on other parts of the interstate system in the Jefferson Parish corridor, also obviously finding no defect in the design. This design was used on over one-half of interstate overpasses built in the 1960’s in Louisiana and other states. The Federal Highway Administration examined the design and approved it, finding no defect in the design. Plaintiff presented no evidence to show that an accident of this type had ever been caused by the shoulder-curb-railing design on this or any of the other similarly designed overpasses since their completion in 1960’s.
On the above evidence, it is clear that DOTD neither knew, nor should have known, that there was any alleged defect in the bridge design and the trial judge’s finding to the contrary was manifestly erroneous. Because such knowledge is an essential element of plaintiffs case, this failure of proof is fatal to her action against DOTD. We therefore must set aside the judgment of the district court.
For the foregoing reasons the judgment in favor of Rena Niven, [7plaintiff, against the Louisiana Department of Transportation and Development is hereby set aside and the matter is dismissed with prejudice.

JUDGMENT VACATED, CASE DISMISSED.

GOTHARD J. dissents.
liGOTHARD, J., dissenting.
I respectfully dissent.