RSIMON, Judge.
Barbara Whitcraft and Karrie Whitcraft appeal a judgment dismissing their claim for damages against the State of Louisiana, through the Department of Transportation and Development (DOTD).
FACTUAL AND PROCEDURAL HISTORY
This case arises out of a motor vehicle accident that occurred at approximately 5:30 p.m. on September 15, 1991, on Highway 190 in Livingston Parish, between the Amite River Outfall Bridge and the Amite River Bridge. At the site, Highway 190 has four lanes of travel; the two eastbound and two westbound lanes are separated by a median fifteen feet wide.
After shopping at the mall in Baton Rouge, Karrie Whitcraft, who was then a minor, was traveling home to Denham Springs in a ear owned by her mother. The car was struck by a truck; it had been traveling west toward Baton Rouge, failed to negotiate a curve in the road, crossed the median, and collided with her car. Karrie sustained serious and painful injuries to her face and body, including an eye socket fracture which has left permanent disfigurement. Marshall Charlton, the driver of the truck, was legally drunk and uninsured.[2]
Barbara Whitcraft brought suit against DOTD on behalf of her daughter for damages for Karrie’s personal injuries, and on her own behalf for the medical expenses and damage to the car. She contends that the highway posed an extreme hazard due to improper design, negative super-elevation, and lack of guardrails. Following a bench trial, the trial judge made the following factual findings:
1. Mr. Charlton was traveling at an excessive rate of speed.
2. Mr. Charlton was legally intoxicated at the time of the accident.
3. All experts agreed that the “critical speed” at that spot (speed that would be too fast to “make that turn”) is in excess of 90 m.p.h., which is almost twice the posted speed limit.
4. There was (sic) not adequate “skid marks” to indicate that Charlton attempted to negotiate the turn in question. In fact, the evidence indicates that Charlton went straight through the turn.
5. Though there was some evidence presented to show that other accidents occurred in this area, there is not adequate evidence to show defendants (sic) should have been put on notice that this was a dangerous area. Further, for clarification, this Court does not find the roadway where the accident occurred is per se dangerous.
Ia6. There is not adequate proof to show defendant had a legal obligation to *266 provide guardrails at the spot where the accident occurred.
7. There is not adequate evidence to show that guardrails would have prevented this accident.
The trial judge further found that Charl-ton was 100% at fault for the accident and dismissed the suit brought against DOTD. We affirm.
APPLICABLE LAW
A plaintiff may recover damages from DOTD under a theory of negligence based on La. C.C. art. 2315 or a theory of strict liability based on La. C.C. art. 2317 and La. R.S. 9:2800. Under either theory the elements of proof are the same. A plaintiff must show that: (1) DOTD had custody of the thing that caused the plaintiffs injuries or damages; (2) the thing was defective, because it had a condition that created an unreasonable risk of harm; (3) DOTD had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time; and (4) the defect in the thing caused plaintiffs injuries. Lee v. State, Through Dep’t of Transp. & Dev., 97-0350 (La.10/21/97), 701 So.2d 676; Sevario v. State, Through Dept. of Transp. & Dev., 98-1302 (La.App. 1 Cir. 11/10/99), 752 So.2d 221, 231, units not considered, 99-3638, 759 So.2d 81, 00-0044 (La.4/7/00), 759 So.2d 81 and 82, writ denied, 99-3457 (La.4/7/00), 759 So.2d 760. To recover, plaintiff bears the burden of proving each required element; failure to prove any one is fatal to the case. Netecke v. State, Through DOTD, 98-1182 (La.10/19/99), 747 So.2d 489, 492.
Each of the first three elements — custody, defect, and notice — requires a factual determination. A court of appeal may not disturb a factual conclusion reached by a trial court in the absence of manifest error or unless the particular finding of fact is clearly wrong. The two-part test for the appellate review of factual findings is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If a reasonable factual basis exists, an appellate court may set aside a trial court’s factual finding only if, after reviewing the record in its entirety, the appeal court determines the trial court’s finding was clearly wrong. Stobart v. State, Through Dep’t of Transp. & Dev., 617 So.2d 880, 882 (La.1993). When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact’s findings. However, should documents or objective evidence so contradict the 1¿witness's story, or the story itself be so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Proof of the fourth element — causation—involves both factual and legal determinations.
ANALYSIS
A. Custody
It is undisputed that Highway 190 is within the state highway system and is maintained by DOTD. This satisfies proof of element number one — custody.
B. Defect
Element number two speaks to the issue of duty. Sevario, 752 So.2d at 231. Pursuant to La. R.S. 48:21(A), DOTD has a statutory duty to maintain the public roadways in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence. Campbell v. State Dep’t of Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898, 901-02. This duty extends not only to prudent and attentive drivers, but also to *267 motorists who are slightly exceeding the speed limit or momentarily inattentive. Ledbetter v. State, Through Dep’t of Transp. & Dev., 502 So.2d 1383, 1387 (La.1987). This duty does not render DOTD the guarantor for the safety of all the motoring public. Briggs v. Hartford Ins. Co., 532 So.2d 1154, 1156 (La.1988). Whether the roadway at the scene of the accident was in a reasonably safe condition will depend on the facts and circumstances of each case. Hunter v. State, Through Dep’t of Transp. & Dev., 620 So.2d 1149, 1151 (La.1993). Design standards at the time of the original construction and at the time of the accident may be relevant factors for consideration, but are not determinative. Id.
Appellants assign as error the finding by the trial court that the roadway where the accident occurred was not per se dangerous, in other words, that DOTD did not breach its duty to maintain a roadway that did not present an unreasonable risk of harm. This is a factual conclusion tested on appeal under the manifest error/clearly wrong standard of review.
Two experts testified on this issue on behalf of the plaintiffs: Gene Moody, an expert in civil engineering, land surveying, and road construction; and Robert Lipp, a professor of mechanical engineering at the University of New Orleans. They testified that super-elevation | .¡(banking) is designed into roads to increase friction and keep drivers on the road; that on the curve between the two bridges, this road fell below the AASHTO standard for super-elevation; [3] and that DOTD did not employ the relatively inexpensive compensating procedure—installation of guardrails in the median. This is an old road and DOTD does not have a duty to bring old highways up to modern AASHTO standards absent a major reconstruction of the highway. In this case, however, there was an overlay project in 1985, which actually called for improvement in super-elevation; it was-not done. Defendant’s lone expert, Joe Blaschke, testified to the contrary. However, plaintiffs contend he should not be given credence, because he always testifies that drivers are at fault and, in this case, had limited on-site inspection.
The trial court did not accept the opinion given by plaintiffs’ experts on direct examination that the road is unreasonably dangerous. The cross examination of these experts provides ample support' for the trial court’s contrary conclusion. Gene Moody admitted that the “critical speed,” the speed at which this deficiency in banking would cause a driver to fail to make the turn, was over 95 miles per hour—far above the posted speed of 55 miles per hour. DOTD does not have a duty to provide a road that is safe at such a speed. Neither Moody nor plaintiffs’ other expert, Robert Lipp, could explain where along the curve, with varying degrees of super-elevation, a vehicle would be more likely to leave the road. A permissible view of the testimony, even without that of defendant’s expert, is that the deficiencies- in banking were irrelevant. Similarly, a permissible view of the testimony about guardrails is that they would make this roadway more, rather than less, dangerous for the majority of drivers and therefore are not an acceptable compensating safety measure for inadequate super-elevation. A median guardrail would have prevented this accident, but open medians allow runoff and recovery for the majority of those who inadvertently leave the road.
We conclude that on this issue the trial court is not clearly wrong.
C. Notice
The trial court also found that the plaintiffs failed to prove that DOTD should have been put on notice that this was a dangerous area. Proof of this third required element for recovery against DOTD is also tested on appeal under the manifest error/clearly wrong standard of review.
*268 |fiPlaintiffs contend that since DOTD regularly inspects all roads, it should have known of the defect. However, if a deficiency existed, it was not readily apparent; the witnesses who were asked of their personal experience testified that they had no problem with the curve. The evidence of direct notice was insufficient as well. Captain Joe Schumate, Jr., Denham Springs Police Department, testified that he did not know of any place with a worse track record for serious accidents, but he had no specifics of where, when, or how they occurred. Accident history is only relevant if the prior accidents are closely related in circumstances to the defect at issue. Bates v. Denney, 563 So.2d 298, 300 (La.App. 1 Cir.), writ denied, 566 So.2d 961 (La.1990); Lincecum v. Missouri Pacific Railroad Co., 452 So.2d 1182, 1188 (La.App. 1 Cir.), writ denied, 458 So.2d 476 (La.1984). Chief Jeff Wesley testified that he called for a meeting about this area, but that was post-accident. The investigating officer, Sgt. Jeffrey Womack, testified that he was not aware of any accidents prior to this one. Of the seven DOTD personnel who testified by deposition, only one was aware of accidents and he did not know any details or if they occurred before or after the accident that is the subject of this appeal.
It cannot be said that the trial court’s finding that the plaintiffs failed to prove that DOTD had or should have had notice of a defective condition was clearly wrong.
D. Legal Cause
The trial court also found that the plaintiffs failed to prove the fourth essential element for recovery — that the deficiencies in this roadway, if any, were the cause of the plaintiffs’ damage. It was apparent from eyewitnesses and the investigating officer that Charlton left the road in the middle of the curve between the two bridges. Both of plaintiffs’ experts had previously testified by deposition that the curve was not the dangerous area. Moody had said that the danger point was right after the first bridge, lessening as one got to the center of the curve. Lipp had testified that the middle of the curve was safe. A reasonable view of the expert opinions expressed at trial is that the expert witnesses were impeached by prior inconsistent statements at their depositions.
Additionally, all experts agreed that super-elevation is designed into a highway to increase friction. A vehicle losing friction and sliding off the road leaves yaw marks. This road was well examined and no yaw marks were found. Plaintiffs explain this deficiency by contending that Charlton did not slip on the curve but was “thrown off the road.” However, plaintiffs’ experts did not explain the mechanics of this phenomenon.
j7The opinion of the trial judge is that Charlton, oblivious to his surroundings, drove straight on a curved road. His conduct, and not the condition of the road, caused his car to leave the road and was the sole legal cause of this tragic event. The trial court’s conclusion is well supported by the evidence and not clearly wrong.
DECREE
For the foregoing reasons, the trial court judgment is affirmed. The appellant is cast for costs of the appeal.
AFFIRMED.

. At trial, seven and one-half years post-accident, Marshall Charlton could not be found.

. AASHTO is an acronym for the American Association of State Highway and Transportation Officials.